# ILLINOIS OFFICIAL REPORTS

## Supreme Court

---

### *People v. Henderson*, 2013 IL 114040

---

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. CARL HENDERSON, Appellant. |
| Docket No. | 114040 |
| Filed | May 23, 2013 |
| Held<br><br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Where a police stop of a car was not legally justified but defendant backseat passenger exited the vehicle and fled, dropping a gun, a motion to suppress it would not have been granted at his trial for aggravated unlawful use of a weapon and counsel was not ineffective in failing to make it—fruit-of-the-poisonous-tree claim precluded by break in the chain of causation. |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. Stanley J. Sacks, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Michael J. Pelletier, State Appellate Defender, Alan D. Goldberg, Deputy Defender, and Brian E. Koch, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Chicago, and Jon Terry, law student, for appellant. |
|---|---|
| | Lisa Madigan, Attorney General, of Springfield, and Anita Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Annette Collins and Yvette Loizon, Assistant State's Attorneys, of counsel), for the People. |
| Justices | JUSTICE THEIS delivered the judgment of the court, with opinion. |
| | Chief Justice Kilbride and Justices Freeman, Thomas, Garman, Karmeier, and Burke concurred in the judgment and opinion. |

## OPINION

¶ 1    Following a bench trial in the circuit court of Cook County, defendant Carl Henderson was found guilty of aggravated unlawful use of a weapon (720 ILCS 5/24-1.6(a)(1), (a)(3)(A) (West 2008)) and sentenced to eight years' imprisonment. On appeal, defendant argued that his trial counsel rendered ineffective assistance by failing to file a motion to suppress the weapon. The appellate court rejected defendant's argument, and affirmed the judgment of the circuit court. 2012 IL App (1st) 101494. For the reasons that follow, we affirm.

¶ 2                                    BACKGROUND

¶ 3    The following evidence was adduced at defendant's trial. On September 8, 2009, Officers Robert Staken and Matthew Brophy were on routine patrol in a marked squad car in the area of Central Park and Adams Street in Chicago. Brophy was driving. At about 1:30 a.m., an individual flagged them down. Both officers described this individual as a black male in his 20s. The officers did not ask his name. He was, according to Staken, an "anonymous citizen." Brophy recalled that the man was of average height, meaning 5 feet 10 inches tall. Staken did not recall what the man was wearing, whether he had facial hair, or how tall he was. The man advised the officers of a "possible gun" in a tan, four-door Lincoln. Staken testified that the man also identified the number of persons in the Lincoln, but Staken was not asked, and he did not volunteer, that number. Shortly after this conversation, the officers observed a tan four-door Lincoln traveling eastbound on Madison Street. They activated their squad car lights and "curbed" the vehicle. The officers did not observe the driver commit any traffic violations. The driver immediately exited the Lincoln and began walking toward the officers, who had exited their squad car. The officers ordered the driver back to his vehicle, after which they placed him in handcuffs.

¶ 4    The officers next ordered the front seat passenger out of the vehicle. The passenger

complied. After conducting a pat-down search for weapons, the officers placed the passenger in handcuffs and brought him to the rear of the Lincoln. While Brophy watched the driver and the front seat passenger, Staken ordered the backseat passenger, defendant, out of the vehicle. Defendant told Staken that the door on the passenger side did not open, so Staken ordered him to get out on the driver's side. Defendant complied. Brophy walked defendant over to Staken, at which point, according to Staken, defendant "took off running" and "dropped a weapon onto the ground." Staken thought the weapon, a handgun, came from defendant's waistband. Staken never saw the gun in defendant's hand.

¶ 5        Staken told Brophy, who was handling the driver and front seat passenger, that a handgun was on the ground. Staken then pursued defendant in the squad car as defendant ran eastbound on Madison Street. After defendant fell to the ground, Staken arrested him. When Staken returned with defendant to the place where the Lincoln was parked, Brophy advised Staken that he had recovered the weapon, a .22-caliber handgun loaded with four bullets. Brophy testified that the gun was found about two feet from the Lincoln.

¶ 6        Defendant did not testify and did not call any witnesses.

¶ 7        The trial court found defendant guilty of aggravated unlawful use of a weapon. During the court's oral ruling, the trial judge observed that a motion to suppress the gun "would not have [had] any chance of success." The court elaborated:

"If [defendant] would have stayed there for the search, I think there would have been a basis for [a] motion to suppress as to [defendant]; that all the police know at that point was that someone stopped [them] or flagged [them] down, whatever that was, said there might possibly be a gun in that car. That would be dubious at best about probable cause to stop that car and search the guys in the car.

If defendant would have stayed there for the search, he would have been a lot better off than running off. But by running off and leaving the gun behind, and I believe he did drop the gun as he was running off, the gun becomes abandoned and there's no basis for a motion to suppress under those circumstances. If he would have stayed for the search, I think a motion [to suppress] would have been appropriate to file under those circumstances. But since he didn't stay for the search, he did not submit to police authority, therefore, there's no basis for a motion to suppress evidence as far as [defendant] is concerned."

The trial court subsequently sentenced defendant to eight years' imprisonment.

¶ 8        Defendant appealed, arguing that his trial counsel was ineffective because she failed to file a motion to suppress the gun. Defendant maintained that the officers' initial seizure of the Lincoln was illegal and that the recovery of the gun was the fruit of that illegal seizure. The appellate court agreed with defendant that the initial seizure was illegal "because it was based on an anonymous tip that was not sufficiently reliable to provide the officers with a reasonable suspicion that defendant was engaged in criminal activity which would justify a stop under *Terry v. Ohio*, 392 U.S. 1 (1968)." 2012 IL App (1st) 101494, ¶ 9. The appellate court, however, agreed with the State that defendant was not seized within the meaning of the fourth amendment at the time he dropped the gun and, thus, the gun could not be the fruit of an illegal seizure. *Id.* ¶¶ 12, 27. The appellate court concluded that because any motion

to suppress would not have succeeded, defendant's trial counsel was not ineffective by failing to file such a motion. *Id.* ¶ 28.

¶ 9    We allowed defendant's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Feb. 26, 2010).

¶ 10                                ANALYSIS

¶ 11    A claim of ineffective assistance of counsel is evaluated under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Ramsey*, 239 Ill. 2d 342, 433 (2010); *People v. Albanese*, 104 Ill. 2d 504, 526 (1984). Under this test, a defendant must demonstrate that counsel's performance fell below an objective standard of reasonableness, and a reasonable probability exists that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Ramsey*, 239 Ill. 2d at 433. A defendant's failure to establish either prong of the *Strickland* test precludes a finding of ineffective assistance of counsel. *People v. Patterson*, 217 Ill. 2d 407, 438 (2005).

¶ 12    Defendant argues that in order to prevail on his ineffectiveness claim, he need not show that the motion to suppress would have been granted; rather, he must show only that a reasonable probability exists that the motion would have been granted and that the outcome of his trial would have been different. In a line of cases beginning with *People v. Orange*, 168 Ill. 2d 138, 153 (1995), this court has stated that, in order to establish prejudice where an ineffectiveness claim is based on the failure to file a suppression motion, the defendant must show that a reasonable probability exists both that the motion would have been granted, and that the result of the trial would have been different had the evidence been suppressed. Thus, defendant's position finds support in the case law. We note, however, that other opinions have recognized a more stringent standard, stating that defendant must establish that the unargued suppression motion was "meritorious," *i.e.*, it would have succeeded, and that a reasonable probability exists that the trial outcome would have been different without the challenged evidence. *E.g.*, *People v. Harris*, 182 Ill. 2d 114, 146 (1998); *People v. Bailey*, 232 Ill. 2d 285, 289 (2009). Thus, the position defendant expressly disavows is also supported by our case law.

¶ 13    The underpinnings of the *Orange* "reasonable probability standard" and the *Harris* "meritorious standard" can be traced back to a single case: *Kimmelman v. Morrison*, 477 U.S. 365 (1986).

¶ 14    In *Kimmelman*, the respondent filed a petition for a writ of *habeas corpus* arguing, in relevant part, that counsel rendered ineffective assistance, in violation of the Sixth Amendment, in that he failed to file a timely motion to suppress evidence seized without a search warrant, in violation of the Fourth Amendment. The Supreme Court noted that the Sixth Amendment claim must be evaluated under the *Strickland* standard, and then explained what more was required of the respondent:

    "Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to

-4-

demonstrate actual prejudice." *Kimmelman*, 477 U.S. at 375.

¶ 15 Although *Orange* cited favorably to *Kimmelman*, it did not faithfully set forth the standard adopted in that case. We now clarify that where an ineffectiveness claim is based on counsel's failure to file a suppression motion, in order to establish prejudice under *Strickland*, the defendant must demonstrate that the unargued suppression motion is meritorious, and that a reasonable probability exists that the trial outcome would have been different had the evidence been suppressed.

¶ 16 In the instant case, the success of a motion to suppress the gun is dependent on two related propositions advanced by defendant: (1) the vehicle stop was illegal; and (2) the gun was the fruit of that illegal seizure. We consider each proposition in turn.

¶ 17                                        Legality of the Vehicle Stop

¶ 18 Defendant argues that the tip provided to police was not reliable enough to provide a reasonable suspicion or probable cause to support the vehicle stop. The State counters that the trial record is insufficient to determine the legality of the vehicle stop because the record was not developed for the purpose of litigating or preserving that claim; rather, the record was developed only for the purpose of determining defendant's guilt on the charged offense. Based on this purported insufficiency in the record, the State urges this court to reject defendant's ineffective assistance claim outright. Citing *People v. Bew*, 228 Ill. 2d 122 (2008), the State posits that the claim is more appropriately raised in a postconviction proceeding where a factual record bearing precisely on the issue of the reasonableness of the vehicle stop can be created.

¶ 19 Preliminarily, we note that during oral argument before this court, the State indicated that if defendant had chosen to forgo his ineffectiveness claim on direct appeal, and instead raised that issue, including the legality of the traffic stop, in a postconviction petition, the State would have sought dismissal of that petition under the doctrine of *res judicata*, arguing that the issue should have been raised on direct appeal. Thus, the State's argument that the record here is insufficient and a postconviction proceeding is the better method for litigating defendant's claim is not well taken. This aside, we disagree with the State that this court's opinion in *Bew* provides a basis to reject outright defendant's ineffectiveness claim.

¶ 20 In *Bew*, the defendant claimed that trial counsel was ineffective for failing to file a motion to suppress drug evidence obtained as a result of a canine sniff during a vehicle stop. At the time of trial, *People v. Cox*, 202 Ill. 2d 462 (2002), was the governing law. During the course of the defendant's direct appeal, the law changed. *Bew*, 228 Ill. 2d at 124 (citing *Illinois v. Caballes*, 543 U.S. 405 (2005), *People v. Caballes*, 221 Ill. 2d 282 (2006)). Based on this change in the law, the defendant could no longer establish prejudice resulting from counsel's failure to file a suppression motion. *Id.* at 133. Although the defendant asserted alternative grounds for suppression of the drug evidence, we concluded that the record was insufficient to evaluate the defendant's new arguments and the State's counter-arguments. *Id.* at 133-34. We thus rejected defendant's ineffective assistance claim, noting that the defendant may raise the alternative grounds for suppression under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2002)). *Id.* at 135.

¶ 21    The approach we adopted in *Bew* was based on the analogous situation discussed in *Massaro v. United States*, 538 U.S. 500 (2003). There, the Supreme Court explained: " '[w]hen an ineffective-assistance claim is brought on direct appeal, appellate counsel and the court must proceed on a trial record not developed precisely for the object of litigating or preserving the claim and thus often incomplete or inadequate for this purpose.' " *Bew*, 228 Ill. 2d at 134 (quoting *Massaro*, 538 U.S. at 504-05). Conversely, in a collateral proceeding, "the defendant has a full opportunity to prove facts establishing ineffectiveness of counsel, [and] the government has a full opportunity to present evidence to the contrary ***." (Internal quotation marks omitted.) *Id.*

¶ 22    *Bew* and *Massaro* demonstrate that where, as here, the defendant's claim of ineffectiveness is based on counsel's failure to file a suppression motion, the record will frequently be incomplete or inadequate to evaluate that claim because the record was not created for that purpose. In the instant case, however, the trial court allowed defense counsel considerable leeway in her examination of Officers Staken and Brophy, eliciting the type of testimony that would have been elicited at a suppression hearing. Thus, the instant case is distinguishable from *Bew*. Moreover, the State has already conceded the sufficiency of the trial record. In its brief before the appellate court, the State defended the legality of the traffic stop based on the same record the State now claims is insufficient to make that determination. The State argued, in relevant part:

> "In this case, the officers were flagged down and received reliable information from a citizen on Adams and Central Park that there was a gun in a four-door, tan Lincoln. The citizen also stated the number of people in the car. While on their normal patrol, approximately five minutes later, the officers saw the four-door, tan Lincoln near the vicinity where the citizen flagged them down. The information provided by the citizen was correct, and the officers were able to corroborate the tip by confirming the color of the car, the make of the car, the number of people in the car, the car's proximity to the citizen, and the proximity in time to when the information was provided. The officers were not required to turn a blind eye to the vehicle fitting the description. Thus, the officers had reasonable, articulable suspicion of criminal activity, and this was a valid *Terry* stop."

¶ 23    Only after the appellate court ruled adversely to the State, determining that the vehicle stop was unlawful (2012 IL App (1st) 101494, ¶ 9), did the State argue that the record was not sufficiently developed. Although the State could, as the prevailing party below, raise any reason or theory appearing in the record in support of the judgment, the State cannot assert a new theory inconsistent with the position it adopted in the appellate court. *People v. Franklin*, 115 Ill. 2d 328, 336 (1987).

¶ 24    Accordingly, we reject the State's argument regarding the sufficiency of the record and will consider the legality of the officers' conduct when they stopped the Lincoln.

¶ 25    A vehicle stop is subject to the fourth amendment's requirement of reasonableness (*People v. McDonough*, 239 Ill. 2d 260, 267 (2010) (citing *Whren v. United States*, 517 U.S. 806, 810 (1996))), which we analyze under the principles set forth in *Terry v. Ohio*, 392 U.S. 1 (1968). *People v. Close*, 238 Ill. 2d 497, 505 (2010). Under *Terry*, police may conduct a

brief, investigatory stop "where the officer reasonably believes that the person has committed, or is about to, commit a crime." *Id.* A passenger in a vehicle stopped by police, such as defendant here, is seized within the meaning of the fourth amendment, and therefore may challenge the constitutionality of the vehicle stop. *Brendlin v. California*, 551 U.S. 249, 251 (2007); *People v. Bunch*, 207 Ill. 2d 7, 13 (2003).

¶ 26 In the instant case, testimony at trial established that Officers Staken and Brophy did not observe the driver of the Lincoln commit any traffic violations, and that they stopped the vehicle based on a tip provided by an "anonymous citizen" who had flagged them down. A tip from an anonymous person may supply the requisite quantum of suspicion to conduct a *Terry* stop, provided the information bears some indicia of reliability. *Alabama v. White*, 496 U.S. 325, 327 (1990); *People v. Ledesma*, 206 Ill. 2d 571, 583 (2003), *overruled in part on other grounds by People v. Pitman*, 211 Ill. 2d 502, 513 (2004). The tip must be "reliable in its assertion of illegality, not just in its tendency to identify a determinate person." *Florida v. J.L.*, 529 U.S. 266, 272 (2000). As the Supreme Court explained:

> "An accurate description of a subject's readily observable location and appearance is of course reliable in this limited sense: It will help the police correctly identify the person whom the tipster means to accuse. Such a tip, however, does not show that the tipster has knowledge of concealed criminal activity." *Id.*

Knowledge of concealed criminal activity may be demonstrated where the anonymous informant accurately predicts future behavior, thus indicating that the informant has "inside information." *White*, 496 U.S. at 332; accord *Ledesma*, 206 Ill. 2d at 589-90. *White* and *J.L.* illustrate these principles.

¶ 27 In *White*, police received an anonymous telephone tip that a woman, identified by name, would leave a particular address at a particular time, and drive to a certain motel. The caller described the vehicle in detail, including the broken taillight. The caller indicated that the woman would be in possession of an ounce of cocaine in a brown attache case. Police went to that location, where they saw a vehicle in the parking lot that matched the caller's description. Police observed a woman drive off in that vehicle, taking the most direct route to the designated motel. Police stopped the vehicle. With the woman's consent, police searched the car and found a brown attache case which contained marijuana. Following the woman's arrest, the officers also found cocaine in the woman's purse.

¶ 28 The Court held that under the totality of the circumstances, the vehicle stop was justified. *White*, 496 U.S. at 332. The Court noted that while anyone could have provided a detailed description of the vehicle, the caller was able to predict the woman's future behavior, demonstrating a special familiarity with her affairs. *Id.* "Because only a small number of people are generally privy to an individual's itinerary, it is reasonable for police to believe that a person with access to such information is likely to also have access to reliable information about that individual's illegal activities." *Id.*

¶ 29 In contrast to its holding in *White*, the Supreme Court held in *J.L.* that an anonymous telephone tip "that a young black male standing at a particular bus stop and wearing a plaid shirt was carrying a gun" (*J.L.*, 529 U.S. at 268) was not sufficiently reliable to justify a *Terry* stop of that individual (*id.* at 271). The Court noted that the anonymous caller provided

no "predictive information" through which police could test the informant's knowledge or veracity. *Id.* The anonymous tip was nothing more than a "bare report of an unknown, unaccountable informant who neither explained how he knew about the gun nor supplied any basis for believing he had inside information about J.L." *Id.* Thus, the gun recovered by police as a result of their stop-and-frisk of J.L. was properly suppressed. *Id.* at 269.

¶ 30 We conclude that the present case is more closely aligned with *J.L.* than *White*. Although the anonymous citizen provided information that helped identify the vehicle connected to a "possible gun," the citizen provided no predictive information through which police could test the citizen's knowledge of the gun. We recognize that the tip here was provided in person to police, rather than by telephone, as was the case in *J.L.* This fact, standing alone, is insufficient to demonstrate the reliability of the information provided to police. See *People v. Rhinehart*, 2011 IL App (1st) 100683 (holding that an in-person tip was not sufficiently reliable to justify a *Terry* stop where the tip was from an unidentified citizen and disclosed only that a black male at a certain location wearing certain clothing had a gun).

¶ 31 Because the vehicle stop effected an illegal seizure of defendant, we consider his second proposition necessary to the success of a motion to suppress, *i.e.*, that the gun was the fruit of that illegal seizure.

¶ 32                                     Fruit of the Poisonous Tree

¶ 33 The "fruit of the poisonous tree" doctrine is an outgrowth of the fourth amendment exclusionary rule. *People v. Winsett*, 153 Ill. 2d 335, 351 (1992). Under this doctrine, the fourth amendment violation is deemed the "poisonous tree," and any evidence obtained by exploiting that violation is subject to suppression as the "fruit" of that poisonous tree. *People v. McCauley*, 163 Ill. 2d 414, 448 (1994). As we recognized in *People v. Gervasi*, 89 Ill. 2d 522, 528 (1982), the test of whether evidence is the fruit of the poisonous tree was best articulated in *Wong Sun v. United States*, 371 U.S. 471 (1963). Under *Wong Sun*, the question is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Wong Sun*, 371 U.S. at 488 (quoting John MacArthur Maguire, Evidence of Guilt 221 (1959)). In other words, a court must consider "whether the chain of causation proceeding from the unlawful conduct has become so attenuated or has been interrupted by some intervening circumstance so as to remove the 'taint' imposed upon that evidence by the original illegality." *United States v. Crews*, 445 U.S. 463, 471 (1980). Factors relevant to an attenuation analysis include the temporal proximity of the illegal police conduct and the discovery of the evidence; the presence of any intervening circumstances; and the purpose and flagrancy of the official misconduct. *Brown v. Illinois*, 422 U.S. 590, 603-04 (1975); *People v. Johnson*, 237 Ill. 2d 81, 93 (2010).

¶ 34 Importantly, the Supreme Court has rejected a "but for" test under which evidence would be deemed inadmissible simply because it would not have been discovered "but for" the illegal actions of the police. *Wong Sun*, 371 U.S. at 487-88; *Dunaway v. New York*, 442 U.S. 200, 217 (1979). Thus, evidence which comes to light through a chain of causation that

began with an illegal seizure is not *per se* inadmissible. *People v. Harris*, 495 U.S. 14, 17 (1990). See also *People v. Gabbard*, 78 Ill. 2d 88, 95 (1979) (recognizing that *Wong Sun* and its progeny rejected a simple "but for" test).

¶ 35        Defendant argues that all three attenuation factors weigh in his favor. Defendant posits that almost no time passed between his illegal seizure and the discovery of the gun; his flight and abandonment of the gun were direct responses to the illegal seizure; and the officers' conduct was a flagrant violation of Supreme Court fourth amendment precedent.

¶ 36        With respect to the first attenuation factor—temporal proximity—we observe that the record is silent as to the actual amount of time that passed between the initiation of the vehicle stop and the discovery of the gun. Nothing in the record indicates, however, that the stop was unduly prolonged. Although we disagree with defendant that "almost no time passed," we will proceed under the assumption that the temporal proximity factor favors defendant.

¶ 37        Under the second attenuation factor, we focus on the presence of any intervening circumstances between the officers' unlawful conduct in stopping the vehicle and their discovery of the gun. Although defendant seeks to minimize the legal significance of his flight from the vehicle stop, we agree with the State that defendant's flight "ended the seizure," and "anything happening thereafter was, by its very nature, no longer tied to the initial stop." This conclusion is supported by *California v. Hodari D.*, 499 U.S. 621 (1991).

¶ 38        In *Hodari D.*, two officers were on patrol when they noticed four or five youths huddled around a parked car. As the officers' car approached, the youths, including Hodari, panicked and took flight. Immediately prior to one of the officers tackling Hodari, he tossed away a small rock of crack cocaine, which police recovered. In the subsequent juvenile proceeding, Hodari moved to suppress the drug evidence. The court denied the motion, but the California Court of Appeal reversed, holding that Hodari was seized when he saw the officer running toward him; this seizure was unreasonable under the fourth amendment; and the evidence of cocaine had to be suppressed as the fruit of that illegal seizure. *Hodari D.*, 499 U.S. at 623. The California Supreme Court denied review. On *certiorari*, the United States Supreme Court reversed and remanded. *Id.* at 629.

¶ 39        The narrow question before the Court was "whether, with respect to a show of authority, as with respect to application of physical force, a seizure occurs even though the subject does not yield." *Id.* at 626. The Court held it does not. *Id.* The Court reasoned that, assuming the officer's pursuit of Hodari constituted a show of authority enjoining him to halt, because Hodari did not submit to that show of authority, he was not seized within the meaning of the fourth amendment. Thus, the cocaine Hodari abandoned while running from police was not the fruit of a seizure, and his motion to suppress evidence of the cocaine was properly denied. *Id.* at 629.

¶ 40        During the course of its analysis, the Court noted that according to one commentator, an arrest may be accomplished " 'by merely touching, however slightly, the body of the accused *** although he does not succeed in stopping or holding him.' " *Id.* at 625 (quoting A. Cornelius, Search and Seizure 163-64 (2d ed. 1930)). The Court then observed:

        "To say that an arrest is effected by the slightest application of physical force,

despite the arrestee's escape, is not to say that for Fourth Amendment purposes there is a *continuing* arrest during the period of fugitivity. If, for example, [the officer] had laid his hand upon Hodari to arrest him, but Hodari had broken away and had *then* cast away the cocaine, it would hardly be realistic to say that the disclosure had been made during the course of an arrest. Cf. *Thompson v. Whitman*, 18 Wall. 457, 471 (1874) ('A seizure is a single act, and not a continuous fact')." (Emphases in original.) *Id.* at 625.

¶ 41    Defendant concedes that, pursuant to *Hodari D.*, his flight terminated his unlawful seizure. Defendant argues, however, that the foregoing passage from *Hodari D.* is nonbinding *dicta* and, in any event, does not mean that his flight wiped the slate clean, as if the illegal seizure never occurred.

¶ 42    We recognize that the passage from *Hodari D.* quoted above was outside the narrow issue before the Court and not essential to the outcome of that case. As such, the Court's statements are nonbinding *dicta*. See *Exelon Corp. v. Department of Revenue*, 234 Ill. 2d 266, 277 (2009) (discussing the nonbinding nature of *obiter dictum*). Accord *United States v. Parker*, 214 F. Supp. 2d 770, 775 n.4 (E.D. Mich. 2002) (referring to the foregoing quote from *Hodari D.* as *dicta*); *Johnson v. State*, 689 So. 2d 376, 378 (Fla. Dist. Ct. App. 1997) (same); *New Mexico v. Garcia*, 2009-NMSC-046, ¶ 23, 147 N.M. 134, 217 P.3d 1032 (same). We also recognize, however, that Supreme Court *dicta*, even if nonbinding, may be persuasive. Our own appellate court in *People v. Keys*, 375 Ill. App. 3d 459, 462 (2007), found the *dicta* in *Hodari D.* persuasive. In *Keys*, the appellate court held that even if the initial seizure and attempted patdown of the defendant were unlawful, the drugs recovered by police were not recovered through exploitation of that initial illegality, but were discovered as a result of the defendant's escape and abandonment of the drugs. *Keys*, 375 Ill. App. 3d at 464. The appellate court in the instant case also relied on *Hodari D.*, as applied in *Keys*. 2012 IL App (1st) 101494, ¶¶ 24-27.

¶ 43    Federal and state courts outside Illinois have also found the foregoing *dicta* in *Hodari D.* persuasive, although not universally so. Compare, *e.g.*, *United States v. Williams*, 608 F. Supp. 2d 325, 329-30 (E.D.N.Y. 2008) (following the *Hodari D. dicta* and holding that the defendant, by breaking free of the officer's grasp, "rendered the legality of that seizure an irrelevancy"); *State v. Lisenbee*, 13 P.3d 947, 951 (Nev. 2000) (citing favorably to the *Hodari D. dicta* and concluding that "flight after a seizure occurs is an effectual end to that seizure," and "[t]hus, any conduct during flight should be considered apart from the illegal police action"); and *Johnson*, 689 So. 2d at 378 (finding the *Hodari D. dicta* instructive and holding that even if the defendant was seized, his flight brought the contemporaneous tossing of a gun outside the scope of the seizure), with *United States v. Dupree*, 617 F.3d 724, 742 (3d Cir. 2010) (Fisher, J., concurring in part and concurring in the judgment) (observing that to hold, on the basis of *Hodari D.*, that a fleeing suspect cannot reap the exclusionary rule's benefit "completely sidesteps the more sophisticated inquiry our Fourth Amendment jurisprudence mandates"); *Parker*, 214 F. Supp. 2d at 775 n.4 (stating that the *Hodari D. dicta* does not stand for the proposition that evidence initially discovered during an unlawful search and seizure is admissible simply because the party escaped from the officer and abandoned the contraband while fleeing); *Garcia*, 2009-NMSC-046, ¶ 23, 147 N.M. 134,

217 P.3d 1032 (disagreeing with the lower court that the "rather obscure *dicta*" in *Hodari D.* means that "any abandoned evidence not disclosed during the course of an arrest is not subject to suppression" because such a reading would substantially limit the fruit of the poisonous tree doctrine).

¶ 44    Like our appellate court, we find *Hodari D.* persuasive and will follow the Supreme Court's lead on the issue of fourth amendment jurisprudence before us.[1] Thus, similar to *Hodari D.*, "it would hardly be realistic to say" in this case that the disclosure of the gun had been made during the course of defendant's seizure where defendant took flight and *then* dropped the gun. Although defendant's flight did not "wipe the slate clean, as if the illegal seizure never took place," it did interrupt the causal connection between the two events.

¶ 45    Citing *United States v. Wilson*, 953 F.2d 116 (4th Cir. 1991), and *State v. Ingram*, 1998-NMCA-177, 126 N.M. 426, 970 P.2d 1151, defendant argues that his flight, itself, was a direct response to the illegal seizure which did not break the causal connection between the initial illegality and the discovery of the gun. Although defendant's flight was, in some sense, a response to the officers' conduct of stopping the vehicle, we agree with the State that defendant is essentially asserting that but for the vehicle stop, he would not have fled and the gun would not have been discovered. As already noted, the Supreme Court has rejected a but-for or *per se* rule which would render evidence inadmissible at trial simply because it came to light through a series of events that began with an unlawful seizure. *Wong Sun*, 371 U.S. at 487-88; *Dunaway*, 442 U.S. at 217; *Harris*, 495 U.S. at 17. "[B]ut-for causality is only a necessary, not a sufficient, condition for suppression." *Hudson v. Michigan*, 547 U.S. 586, 592 (2006). Rather, a "sufficiently close relationship" between the underlying illegality and the evidence must exist for application of the poisonous-fruit doctrine. *People v. Lovejoy*, 235 Ill. 2d 97, 130 (2009). The out-of-state authorities on which defendant relies do not convince us that the facts here establish a sufficiently close relationship that goes beyond mere but-for causation.

¶ 46    *Wilson* involved overbearing and harassing police conduct that caused an initially consensual encounter at an airport to escalate into an unlawful seizure, culminating in the suspect's flight from police during which he discarded a coat containing illegal drugs. The federal appeals court held that "[i]n an airport setting, where passengers and others are coming and going at a rapid pace, the temptation to manufacture justification for prolonged investigative stops increases," and that to permit the drugs to be used as evidence "might well promote provocative confrontations with suspects, in the hopes of inducing flight and, with luck, the abandonment of contraband." *Wilson*, 953 F.2d at 127. The concerns animating the federal appeals court decision in *Wilson* are not present here.

¶ 47    In *Ingram*, a vehicle stop case, the defendant fled after the officer impermissibly directed him to empty his pockets, abandoning drug evidence which police recovered after giving chase. The New Mexico court of appeals held that because the defendant "merely reacted"

---

[1]Defendant does not argue that the search and seizure clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 6) provides greater protection than its federal counterpart (U.S. Const., amend. IV) in a case such as this.

to the unlawful search, the defendant's flight and discard of the drugs were not independent intervening acts sufficient to purge the taint of the illegal search. *Ingram*, 1998-NMCA-177, ¶ 16, 126 N.M. 426, 970 P.2d 1151. *Ingram*'s conclusion that the defendant "merely reacted" to the unlawful search is akin to saying that but for the illegal search, he would not have fled. As already discussed, Supreme Court precedent requires something more than but-for causation. Thus, we do not find *Ingram* persuasive, and adhere to our initial conclusion that defendant's flight interrupted the chain of causation between the illegal seizure and the discovery of the gun.

¶ 48    Under the third attenuation factor, we consider the purpose and flagrancy of the official misconduct. *Brown*, 422 U.S. at 604. According to defendant, Officers Staken and Brophy flagrantly violated Supreme Court precedent when they stopped the vehicle based on an unreliable anonymous tip, and suppression is warranted in order to deter similar misconduct in the future.

¶ 49    "[O]fficer conduct is 'flagrant' when it is carried out in such a manner as to cause surprise, fear, and confusion, or when it has a quality of purposeful or intentional misconduct." *Johnson*, 237 Ill. 2d at 94. Defendant fails to identify any conduct by the officers during the course of the vehicle stop which would qualify as flagrant under this standard. Although we have determined that the citizen's tip on which the officers relied was insufficient to justify the stop, "[l]ike many issues involving constitutional protections against unreasonable searches and seizures, the reliability of a tip and the propriety of police action in response to that tip are often closely decided issues." *Ledesma*, 206 Ill. 2d at 584. The fact that the officers here failed to discern, at the time they saw the Lincoln, that the tip received just a few minutes earlier was more closely aligned with *J.L.* than *White* does not persuade us that the officers' misconduct was intentional or otherwise flagrant.

¶ 50    We conclude that defendant has failed to demonstrate that the gun was the fruit of the poisonous tree. Defendant's flight interrupted the causal connection between the officers' misconduct, which was not flagrant, and the discovery of the gun. This is not a case where the evidence "could be said to have been obtained by exploitation of the illegality." *Gabbard*, 78 Ill. 2d at 95. To conclude otherwise, as defendant urges, is not only contrary to fourth amendment jurisprudence, but is contrary to public policy. Permitting defendants to flee from police under the circumstances of this case, and yet claim the protections of the fourth amendment, would foster a lack of cooperation with law enforcement officers, putting the police and the public at risk. See *Hodari D.*, 499 U.S. at 627 ("Street pursuits always place the public at some risk, and compliance with police orders to stop should therefore be encouraged."); *Keys*, 375 Ill. App. 3d at 464 (public policy supports courts of law, rather than suspected criminals, determining the legality of seizures); *Henson v. United States*, 55 A.3d 859, 869 (D.C. App. 2012) (if the defendant believed that the officer's conduct was illegal, "he should have tested its legality through the courts, rather than engage in self-help" by fleeing).

¶ 51    Because a motion to suppress the gun would not have been granted, defendant cannot satisfy his burden under *Strickland*. Accordingly, we reject defendant's claim that his trial counsel was ineffective.

¶ 52                               CONCLUSION

¶ 53       We affirm the judgment of the appellate court rejecting defendant's claim of ineffective
assistance of counsel and affirming the judgment of the trial court.

¶ 54       Affirmed.