# Illinois Official Reports

## Appellate Court

---

### *People v. Williamson*, 2018 IL App (3d) 150828

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DEANTHONY E. WILLIAMSON, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-15-0828 |
| Filed | May 14, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Will County, No. 15-CF-330; the Hon. Daniel J. Rozak, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier, Thomas A. Lilien, and Jack Hildebrand, of State Appellate Defender's Office, of Elgin, for appellant.<br><br>James W. Glasgow, State's Attorney, of Joliet (Patrick Delfino, Lawrence M. Bauer, and Steven A. Rodgers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE O'BRIEN delivered the judgment of the court, with opinion.<br>Justices Lytton and McDade concurred in the judgment and opinion. |

¶ 1    Defendant, Deanthony E. Williamson, appeals his conviction for unlawful possession of a controlled substance. Defendant argues (1) the trial court improperly infringed on his right to self-representation and (2) defense counsel provided ineffective assistance during the proceedings on defendant's motion to suppress by abandoning the argument that the cocaine found in defendant's vehicle was the product of an illegal search. We affirm.

¶ 2                                    FACTS

¶ 3    Defendant was charged with unlawful possession of a controlled substance (720 ILCS 570/402(c) (West 2014)). The public defender was appointed to represent defendant.

¶ 4    At a pretrial hearing, an assistant public defender advised the court that defendant wished to proceed *pro se*. The court asked defendant if he wished to represent himself, and defendant said yes. The court then stated:

> "All right. Years ago I used to always try and talk people out of doing that. I don't do it any more. If you're that unwise to try and represent yourself, I figure have at it. I'm going home tonight. You probably won't be for a long, long time because of your own inability to act as your own attorney. All I care about—I am going to go over a few things with you to make sure I know that you have the mental capacity and so forth to represent yourself. It's not whether you have the ability, but whether your waiver is knowing and intelligent."

The court began inquiring as to defendant's age, education level, ability to read and write, history of mental illness, and prior criminal history. The court then stated that defendant did not appear to be paying attention and said that it would continue the matter.

¶ 5    At the next hearing, which was two days later, defendant stated that he still wanted to proceed *pro se*. The court stated: "Okay. All you have to do, sir, is show me that you are paying attention and that you make a knowing and intelligent waiver of your right to counsel. If you can do that, that's fine, you can represent yourself."

¶ 6    The court advised defendant that if he represented himself, he would have to follow the same rules that an attorney would have to follow, lay proper foundations for the admission of evidence, and ask proper questions of witnesses. The court stated that "presenting a defense is simply not a matter of just standing up and telling a story." Defendant said that he understood. The court advised defendant that the State would be represented by experienced attorneys who had training in trial procedure. Defendant stated that he understood. The court then admonished defendant regarding difficulties he might have with jury selection and objecting to inadmissible evidence. Defendant indicated that he understood. The court advised defendant that if he made mistakes during the trial, he would not be able to complain about the competency of his representation on appeal. Defendant said he understood. The court told defendant that it would not grant defendant more time to prepare his case than it would an attorney, and defendant stated that he understood. The following exchange occurred:

> "THE COURT: Okay. Also, I will not appoint any standby counsel. That's something I used to do.
>
> THE DEFENDANT: That's fine, [Y]our Honor.
>
> THE COURT: Pardon?

THE DEFENDANT: I said it's fine.

THE COURT: I just want to explain to you I am not going to do that. I want you to know where I'm coming from. So you are not going to have anybody to turn around to and ask questions. You want to be on your own, so you are going to be on your own.

I've had *pro se* litigants in the past ask me to appoint law clerks, paralegals, secretaries. I have one prior *pro se* that asked me to appoint a runner, whatever that is. I will not do any of that either. If you want to represent yourself, you deal with your own legal research, you deal with your own preparation of documents, you deal with your own investigation, you deal with serving your own subpoenas, whatever it is you want to do. You're totally on your own. Do you understand all that?

THE DEFENDANT: Yes, [Y]our Honor."

¶ 7    The court then read the charge to defendant and discussed the possible sentencing range. The court advised defendant that he had a right to counsel, including appointed counsel. The court then asked defendant if he still wished to represent himself. Defendant said yes. The court allowed the public defender's office to withdraw and granted defendant a continuance.

¶ 8    At the next hearing, approximately one week later, defendant appeared *pro se*. Defendant stated that he wished to present a motion to dismiss for misconduct at the grand jury proceeding. Defendant began to argue his motion and then asked for a continuance because he was not ready. The court granted defendant's motion for a continuance.

¶ 9    One week later, private counsel entered an appearance on defendant's behalf. Defendant, through counsel, filed a motion to suppress, arguing that the cocaine recovered from defendant's vehicle should be suppressed because Officer Alan Beckman stopped defendant's vehicle without reasonable suspicion and searched the vehicle without probable cause.

¶ 10    At the hearing on the motion to suppress, Nancy Martinez testified that she was sitting in the front passenger seat of defendant's vehicle at the time of the incident. Defendant was driving. Defendant stopped at a red light and made a right turn into the left lane. Defendant then switched over to the right lane and continued driving. Defendant stayed within the lanes the entire time and did not cross over the fog line. Officer Beckman stopped defendant's vehicle and approached the driver's side. Beckman asked defendant for his license and registration, which defendant did not have. Beckman told defendant to exit the vehicle and led defendant to the rear of the vehicle. Beckman then removed Martinez from the vehicle and directed her to stand by defendant. Beckman then went to the driver's seat where defendant had been sitting. Beckman "went up to the door, turned back around and looked at [defendant and Martinez] and said that [defendant] was going away for a felony." Beckman showed Martinez and defendant a "controlled substance." Martinez did not know what the substance was.

¶ 11    Defendant testified regarding his driving prior to the traffic stop. Defendant said that he turned right into the left lane and then switched lanes when he saw that a police officer was behind him. Defendant testified that he never drove over the fog line.

¶ 12    The defense rested. The State moved for a directed finding. The State argued: "The defendant and his witness both admitted that when the defendant turned off of that street, they turned into the left lane which is a traffic violation, which gives the officer the right to stop this vehicle. And for all the other grounds, the defendant has failed to meet their [*sic*] burden." Defense counsel argued that turning right into the left lane was not a traffic violation but did

not argue that the officer lacked probable cause to search the vehicle. The court granted the State's motion for directed finding. The court reasoned: "[Defendant] committed a traffic violation, and, therefore, the motion of the State is granted and the motion to suppress is denied." The court made no explicit finding as to whether the officer had probable cause to search the vehicle.

¶ 13        A jury trial was held. Beckman testified that he stopped defendant's vehicle because he observed the vehicle turn right into the "far lane" instead of "the appropriate lane" and drive over the fog line several times. Beckman approached the driver's side of the vehicle and asked for defendant's license and insurance. Defendant did not respond. Beckman observed defendant's "right hand to be balled up" on the center console. Beckman again asked defendant for his license and insurance. Defendant handed Beckman his insurance card. Beckman again asked for defendant's license, but defendant did not respond. Defendant then "reached directly over himself in front of [Beckman]" such that defendant's hand was between door and the driver's seat. Defendant then "unloaded his hand." Beckman explained: "And then at that point I didn't know if he had a weapon or if he had a gun. I told him to put his hands on the steering wheel. At that point he complied. I asked if he had a license, and he said no." Defendant seemed nervous during the encounter.

¶ 14        Beckman directed defendant to stand outside the vehicle. Beckman handcuffed defendant. Beckman told defendant that he was detaining defendant because defendant did not have a license. Beckman testified that the police department's policy for misdemeanor offenses was to arrest offenders and take them to jail. Another officer stood near defendant. The officers removed the passenger from the vehicle.

¶ 15        Beckman then went to the driver's side of the vehicle where he had seen defendant "putting his hand when it was balled up." When Beckman opened the driver's side door, he "observed one plastic Baggie that had a white powdery substance in it right between the doorjamb." Beckman stated that he was able to observe the first bag immediately. He then found two additional bags under the driver's seat. Based on Beckman's training and experience, he believed the white powder in the bags to be cocaine.

¶ 16        A forensic scientist testified that she received three plastic bags containing white powder that were submitted to the crime laboratory in connection with the instant case. She weighed and tested the bags to determine if they contained cocaine. The tests showed that the bags contained cocaine.

¶ 17        Martinez testified that defendant was her friend. She stated that during the encounter with Beckman, defendant's hands were on the steering wheel. Defendant did not put his hands on the steering wheel because Beckman told him to. Rather, defendant had his hands on the steering wheel because he had been driving. Martinez did not see defendant with any plastic bags in his possession on the day of the incident.

¶ 18        The jury found defendant guilty of unlawful possession of a controlled substance. The court sentenced defendant to six years' imprisonment.

¶ 19                                    ANALYSIS
¶ 20                          I. Right to Self-Representation
¶ 21        Defendant argues that the trial court's admonishments were coercive and infringed on his right to self-representation. Specifically, defendant contends that the court improperly

- 4 -

informed defendant that he would go to prison if he proceeded *pro se* and failed to exercise discretion as to whether to appoint standby counsel.

¶ 22 Defendant acknowledges that this issue was forfeited but asks us to review it under the plain-error doctrine. The first step in plain-error analysis "is to determine whether the claim presented on review actually amounts to a 'clear or obvious error.' " *People v. Staake*, 2017 IL 121755, ¶ 33 (quoting *People v. Sebby*, 2017 IL 119445, ¶ 49).

¶ 23 "It is well established that the sixth amendment to the United States Constitution guarantees an accused in a criminal proceeding both the right to the assistance of counsel and the correlative right to proceed without counsel." *People v. Haynes*, 174 Ill. 2d 204, 235 (1996).

¶ 24 Here, no clear or obvious error occurred because the record does not establish that any "infringement" on defendant's right to self-representation occurred. After the court's admonishments and refusal to consider the appointment of standby counsel, defendant told the court that he still desired to proceed *pro se*. The court granted defendant's request to represent himself. Approximately two weeks later, for reasons not apparent on the record, defendant chose to exercise his right to retain counsel.

¶ 25 We reject defendant's argument that "his subsequent abandonment of his right to self-representation can be attributed to the coercive admonishments of the court." There is no indication in the record that defendant's choice to retain counsel was at all related to the trial court's admonishments. It is equally plausible that defendant chose to hire private counsel because he found representing himself to be difficult or because he obtained sufficient funds to do so. We decline to speculate as to defendant's reasons for retaining counsel. Accordingly, we find that the record does not establish that the court's admonishments infringed on defendant's right to self-representation, as defendant chose to proceed *pro se* despite the admonishments.

¶ 26 II. Ineffective Assistance of Counsel

¶ 27 Defendant argues that he received ineffective assistance of counsel where counsel abandoned the argument that Officer Beckman lacked probable cause to search defendant's vehicle by including the issue in the written motion to suppress but failing to seek a ruling on it. Defendant argues that if counsel had sought a ruling on the issue, the trial court would have granted the motion to suppress. The record supports defendant's claim that counsel abandoned this issue. However, the record is not sufficiently developed to determine whether abandonment of this issue constituted ineffective assistance of counsel.

¶ 28 We evaluate claims of ineffective assistance of counsel under the test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Henderson*, 2013 IL 114040, ¶ 11. "Under this test, a defendant must demonstrate that counsel's performance fell below an objective standard of reasonableness, and a reasonable probability exists that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* To establish prejudice, "the defendant must demonstrate that the unargued suppression motion is meritorious, and that a reasonable probability exists that the trial outcome would have been different had the evidence been suppressed." *Id.* ¶ 15.[1] A meritorious suppression motion is one that "would have succeeded." *Id.* ¶ 12.

_____

[1]Here, defendant argues that counsel was ineffective for abandoning a claim contained in the written motion to suppress, whereas the *Henderson* defendant argued that counsel was ineffective for

- 5 -

¶ 29    "[W]here *** the defendant's claim of ineffectiveness is based on counsel's failure to file a suppression motion, the record will frequently be incomplete or inadequate to evaluate that claim because the record was not created for that purpose." *Id.* ¶ 22. In such instances, the ineffective assistance claim may "be better suited to collateral proceedings." *People v. Veach*, 2017 IL 120649, ¶ 46.

¶ 30    Here, the record is inadequate to evaluate defendant's ineffective assistance claim. There is no indication in the record as to why counsel abandoned the claim that Beckman lacked probable cause to search defendant's vehicle. *Cf. id.* ¶ 51 (holding that the record was sufficient to address the defendant's ineffective assistance of counsel claim where the record showed counsel's motivation for taking the challenged action). Moreover, the record is insufficient to determine whether the abandoned claim would have been successful had it been pursued at the suppression hearing. See *Henderson*, 2013 IL 114040, ¶ 15.

¶ 31    For example, defendant argues that Beckman did not have probable cause to believe that his vehicle contained evidence of criminal activity based on Beckman's observation that defendant dropped something between the driver's seat and the door. However, Beckman did not testify at the suppression hearing, and the matter of whether Beckman had probable cause to search the vehicle was not at issue at the trial. Accordingly, Beckman was never questioned regarding his reasons for searching the vehicle. It is possible that if Beckman had been so questioned, he may have testified that there were additional considerations in forming his decision to search the vehicle.

¶ 32    Also, it is impossible to determine on this record whether the cocaine would have been admissible pursuant to the inevitable discovery doctrine. The State argues on appeal that even if the search of the vehicle was unlawful, as defendant claims, the cocaine would have been inevitably discovered when Beckman secured defendant's vehicle before taking defendant to the police station or during an inventory search of the vehicle if it had been impounded. See *People v. Sutherland*, 223 Ill. 2d 187, 227-28 (2006) ("[The inevitable discovery] exception [to the exclusionary rule] permits evidence, that would otherwise be inadmissible at trial, to be admitted where the State can show that such evidence 'would inevitably have been discovered without reference to the police error or misconduct.' " (quoting *Nix v. Williams*, 467 U.S. 431, 448 (1984))). In response, defendant argues that the vehicle would not have been secured by an officer or impounded because Martinez, defendant's passenger, could have attended to the vehicle after defendant's arrest.

¶ 33    Significantly, there was no evidence presented at the trial or the suppression hearing regarding what would have happened to the vehicle after defendant's arrest. There was no testimony as to police procedures for securing or impounding vehicles after an arrest. There was also no evidence establishing either that Martinez had a valid driver's license such that she could have driven the vehicle or that the police would have released the vehicle to Martinez if she did not have a driver's license.

¶ 34    Viewing the above considerations in totality, we conclude that the record is not sufficiently developed to evaluate defendant's claim that his counsel was ineffective for abandoning the issue that Beckman lacked probable cause to search his vehicle. Accordingly, we do not reach

_____

failing to file a suppression motion at all. *Henderson*, 2013 IL 114040, ¶ 1. However, the prejudice standard set forth in *Henderson* applies with equal force to the instant case because both claims essentially raise the same issue—namely, that counsel failed to argue a suppression issue.

the merits of this issue. We note, however, that defendant is not precluded from raising this issue in postconviction proceedings, where the record may be adequately developed. See *People v. Bew*, 228 Ill. 2d 122, 135 (2008).

¶ 35            CONCLUSION

¶ 36   For the foregoing reasons, the judgment of the trial court is affirmed.

¶ 37   Affirmed.