**NOTICE:** This order was filed under Illinois Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (3d) 240314-U

Order filed July 9, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2025

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 18th Judicial Circuit, Du Page County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-24-0314 Circuit No. 21-CF-1813 |
| JOSEPH T. DANIELS, | ) ) ) | Honorable Daniel P. Guerin, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE ANDERSON delivered the judgment of the court.
Presiding Justice Brennan and Justice Davenport concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*: (1) The evidence was sufficient to prove that defendant possessed a firearm. (2) Counsel's failure to file a motion to quash arrest and suppress evidence did not constitute ineffective assistance.

¶ 2     Defendant, Joseph T. Daniels, was convicted of unlawful possession of a controlled substance (720 ILCS 570/402(c) (West 2020)), armed violence (720 ILCS 5/33A-2(a) (West 2020)), unlawful possession of a weapon by a felon (UPWF) (*id.* § 24-1.1(a)), and five counts of aggravated unlawful use of a weapon (AUUW) (*id.* § 24-1.6(a)(1)). Defendant appeals his

convictions, arguing (1) the State failed to prove that he possessed a firearm and (2) counsel provided ineffective assistance by failing to file a motion to quash arrest and suppress evidence. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4         At a bench trial, the evidence presented established that, at approximately 11 p.m. on October 9, 2021, Dixmoor Police Detective Paul Glasper was off-duty and working as a security guard for a hotel restaurant in Oakbrook Terrace. Glasper initially encountered defendant, who was wearing a tight-fitting hooded sweatshirt and skinny jeans, at the front of the restaurant and they engaged in conversation as defendant waited for a table. Shortly after being seated, defendant was told by restaurant staff that he had to leave the establishment and could not return due to his "boisterous" conduct. As defendant passed Glasper at the entrance of the restaurant, Glasper was informed by the restaurant's bar manager, Justin Kelm, that defendant was being ejected from the premises. Prior to defendant leaving the restaurant, neither Glasper nor Kelm noticed any obvious bulges under defendant's clothing that would signal defendant was carrying a weapon.

¶ 5         As defendant entered the adjacent hotel lobby after exiting the restaurant, Glasper saw and heard a gun drop onto the lobby's tile floor. The gun was a Glock .45-caliber firearm with an extended magazine, approximately six inches in width and six to eight inches in length. The gun was loaded, with one round of ammunition in the chamber and 21 rounds in the magazine. Glasper observed defendant casually pick up the gun and continue walking. At this time, a group of patrons were waiting at the entrance to the restaurant and the hotel lobby was occupied with numerous guests. Glasper drew his gun, pointed it at defendant, and began giving loud verbal commands for defendant to put the gun down. Defendant responded, saying "Oh, man. I didn't know. You got the gun. Please let me go." After Glasper said no, defendant kneeled down, placed the gun on the

2

floor, and put his hands in the air. As Glasper picked up the gun, defendant continued begging to be let go before he suddenly stood and ran across the lobby toward the front door. Glasper tripped defendant twice with his leg to stop and detain him until Oakbrook Terrace police officers arrived minutes later. While detaining defendant, Glasper performed a protective sweep to check for more weapons and found over $3,000 in defendant's pocket. In addition to the firearm and money that Glasper recovered from defendant, police officers discovered a bag of cocaine, weighing 16.1 grams, in the left pocket of defendant's pants. Further police investigation revealed defendant had never applied for or obtained a valid firearm owner's identification card or concealed carry license.

¶ 6    In finding defendant guilty, the court stated:

"The fact is, the gun fell to the ground and within—immediately within proximity of the Defendant—he picked it up, and he had it on his person at that point.

I understand other people were around; defense made that point. I have considered that, but it was the Defendant who immediately picked it up and started to walk away with it. He didn't, you know, try to bring it to anybody's attention that this was a gun that wasn't his or anything. The reasonable inference is it was his gun that he had, because he just immediately picked it up off the floor and started walking away with it casually, as the guard described, and didn't stop walking until the second drop the gun command. And, clearly, he had the gun on him, and put it on the floor later when he was on his knees."

The court further noted that defendant had not provided any authority to support his assertion that his momentary handling of the firearm did not constitute possession.

¶ 7    Defendant filed a motion for new trial, arguing that his momentary handling of the firearm was analogous to *United States v. Kitchen*, 57 F.3d 516 (7th Cir. 1995), where the court held that

3

a defendant's momentary handling of cocaine did not constitute possession because there was no evidence demonstrating the defendant intended to walk away with or otherwise transport the narcotics. The court denied the motion.

¶ 8                                    II. ANALYSIS

¶ 9                            A. Sufficiency of the Evidence

¶ 10        On appeal, defendant first argues that his firearm-related convictions should be reversed because his momentary handling of the gun was insufficient to prove that he possessed a firearm. We review challenges to the sufficiency of evidence in the light most favorable to the State to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *People v. Gray*, 2024 IL 127815, ¶ 20. It is not this court's function to retry defendant, and we will not substitute our judgment for that of the trier of fact as to the weight of the evidence or witness credibility. *People v. Jones*, 2023 IL 127810, ¶ 28. Under this standard of review, a criminal conviction will not be disturbed unless "the evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of the defendant's guilt." *People v. Conway*, 2023 IL 127670, ¶ 16.

¶ 11        To sustain defendant's convictions for armed violence, UPWF, and AUUW, the State was required to prove, *inter alia*, that defendant possessed a firearm. See 720 ILCS 5/33A-2(a), 24-1.1(a), 24-1.6(a)(1) (West 2020). Defendant solely contends that the State failed to prove possession and does not challenge the sufficiency of the evidence as to the other elements of the offenses. Whether defendant possessed a firearm is a factual issue, and we will not disturb the court's findings absent evidence that "is so unbelievable that it creates a reasonable doubt as to the defendant's guilt." See *People v. Jones*, 2019 IL App (1st) 170478, ¶ 27.

¶ 12        To establish that defendant was in actual possession of a firearm, the evidence needed to show that defendant exercised some form of dominion over the firearm. See *id.* Defendant does not dispute that he picked up the gun and Glasper's testimony that he saw defendant pick up the gun and walk away with it is sufficient to establish that defendant was in actual possession of a firearm. See *id.* (actual possession proven by testimony that defendant exercised dominion over a firearm by having it on his person). Despite testimony that Glasper and Kelm did not notice any visible bulges indicating that defendant was concealing a firearm under his fitted clothing, it was not unreasonable for the court to find that the firearm likely belonged to defendant based on the fact that defendant immediately retrieved it from the floor after it had fallen in close proximity to him and nonchalantly continued on his way. See *id.* ¶ 32 (trier of fact is under no obligation to disregard inferences that flow from the evidence or raise all possible explanations for defendant's innocence to the level of reasonable doubt). Further, whether defendant owned the gun or had it on his person while inside the restaurant is not dispositive here.

¶ 13        Actual possession has no statutory minimum time requirement for exercising dominion over a weapon, and no Illinois authority suggests that culpability for the relevant offenses at issue is dependent on the length of time that defendant possessed the firearm. Defendant's claims in support of such an exception—that he innocently picked up the gun to prevent a child from finding it and that his surrender of the gun on command was indicative of his intent to get rid of it—are unpersuasive. Defendant did not assert any affirmative defense of necessity based on any such circumstances to justify his possession of the firearm at trial and does not expressly raise such a defense on appeal. See *People v. Gullens*, 2017 IL App (3d) 160668, ¶¶ 20, 23 (necessity defense applicable where defendant briefly possessed a stolen firearm to return it to the store in an effort eliminate the threat to public safety). Moreover, the evidence does not support this defense as the

5

evidence demonstrates that defendant made no attempt to alert anyone to the presence of the firearm, and he only relinquished it once he was ordered to do so. See *People v. Wiggen*, 2021 IL App (3d) 180486, ¶¶ 18, 24 (a challenge to the sufficiency of the evidence premised on an affirmative defense asserted for the first time on appeal is unsuccessful where evidence did not raise the affirmative defense).

¶ 14                              B. Ineffective Assistance of Counsel

¶ 15        Next, defendant argues that his counsel was ineffective for failing to file a motion to quash arrest and suppress evidence. For defendant to prevail on this claim, he must show that counsel's performance was deficient and that defendant was prejudiced by the alleged deficiency. See *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To adequately establish prejudice where counsel's purported deficiency was failing to file a suppression motion, defendant must demonstrate (1) that the unargued motion would have been successful on the merits and (2) a reasonable probability exists that the trial outcome would have been different if the challenged evidence had been suppressed. See *People v. Henderson*, 2013 IL 114040, ¶ 15.

¶ 16        Defendant asserts that if a motion to suppress had been filed by counsel, it would have been meritorious because (1) Glasper illegally seized him without probable cause and (2) the gun, money, drugs, and information revealing defendant's identity and criminal history were all fruits of the illegal seizure. Had that evidence been suppressed, defendant argues that he would not have been convicted of any of the charged offenses. The State counters that the record is inadequate to review his ineffective assistance claim because the issue of probable cause was not raised at trial.

¶ 17        In cases where an ineffective assistance claim is premised on counsel's failure to file a suppression motion, the record is often insufficient to properly evaluate the issue because the record was not developed for that purpose. *People v. Williamson*, 2018 IL App (3d) 150828, ¶ 29.

6

Accordingly, collateral proceedings may be a more appropriate avenue for resolving an ineffective assistance claim in these instances. *Id.* In the instant matter, however, the record contains testimony related to the specific circumstances surrounding Glasper's conduct. See *Henderson*, 2013 IL 114040, ¶ 22 (record sufficient for ineffectiveness claim on direct appeal where the same type of testimony would have been elicited at suppression hearing). Therefore, we reject the State's contention that the record is incomplete to the extent that defendant's claim is unreviewable.

¶ 18        Section 107-3 of the Code of Criminal Procedure of 1963 allows any person to "arrest another when he has reasonable grounds to believe that an offense other than an ordinance violation is being committed." 725 ILCS 5/107-3 (West 2020). "The statutory phrase reasonable grounds has the same substantive meaning as probable cause." (Internal quotation marks omitted.) *People v. Contreras*, 2011 IL App (2d) 100930, ¶ 37. Probable cause exists if a reasonably cautious person could infer that a suspect had committed or was about to commit a crime based on the totality of circumstances. *People v. Long*, 369 Ill. App. 3d 860, 866-67 (2007). Probable cause determinations are premised on commonsense considerations and are evaluated on the probability of criminal activity, rather than proof beyond a reasonable doubt. *People v. Jackson*, 232 Ill. 2d 246, 275 (2009). "[A] finding of probable cause does not require evidence sufficient to support a conviction, nor even evidence demonstrating that it is more likely than not that the suspect committed a crime." *People v. Burks*, 355 Ill. App. 3d 750, 757 (2004).

¶ 19        Although Glasper was off-duty and not acting in his official capacity as a police officer at the time of the incident, he nevertheless had the authority as a private security guard to detain defendant if probable cause existed pursuant to section 107-3. See *Poris v. Lake Holiday Property Owners Ass'n*, 2012 IL App (3d) 110131, ¶ 26, *rev'd in part on other grounds*, 2013 IL 113907 (security guards share the same authority as an ordinary citizen to effectuate an arrest).

7

Immediately after being informed that defendant was being ejected from the restaurant due to his conduct, Glasper witnessed defendant pick up a firearm and continue walking through the hotel lobby. After Glasper drew his own weapon and verbally commanded defendant to put the gun down, defendant placed the gun on the floor, begged Glasper to let him go, and then tried to run when Glasper indicated he would not let defendant leave. When considered separately, defendant's mere possession of the gun or his subsequent attempted flight would not be adequate to establish probable cause. See *People v. Wilson*, 2020 IL App (1st) 170443, ¶¶ 28, 35. In the aggregate, however, defendant's problematic behavior leading to his removal from the restaurant and his visible handling of a sizeable weapon in a crowded, adjacent area immediately afterward created sufficient circumstances for Glasper to have reasonably inferred that defendant was about to commit a crime. At a minimum, these facts establish that probable cause existed for Glasper to reasonably believe that defendant was committing disorderly conduct. See 720 ILCS 5/26-1(a)(1) (West 2020) (disorderly conduct occurs when an individual knowingly acts in such an unreasonable manner as to alarm or disturb another and to provoke a breach of the peace); *People v. Eyler*, 2019 IL App (4th) 170064, ¶ 22 (disorderly conduct "embraces a wide variety of conduct serving to destroy or menace the public order and tranquility." (Internal quotation marks omitted)). Moreover, defendant's plea to leave and sudden attempt to flee were evasive maneuvers that, when combined with defendant's other actions, further established probable cause that defendant was engaging in criminal activity. See *Wilson*, 2020 IL App (1st) 170443, ¶ 35 (probable cause found where defendant fled after being observed openly carrying firearm). Based on the totality of the circumstances, Glasper had reasonable grounds to briefly detain defendant until the Oakbrook Terrace police officers arrived. Consequently, counsel's failure to file a motion to suppress was not ineffective assistance because Glasper's seizure of defendant was proper under section 107-3.

See *Henderson*, 2013 IL 114040, ¶ 51 (defendant cannot satisfy his burden under *Strickland* where a motion to suppress would have been denied).

¶ 20                                              III. CONCLUSION

¶ 21          The judgment of the circuit court of Du Page County is affirmed.

¶ 22          Affirmed.