2021 IL App (2d) 180590-U
No. 2-18-0590
Order entered February 9, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of Lake County. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 17-CF-1041 |
| | ) | |
| CORNELL A. CONELY, | ) | Honorable |
| | ) | Victoria A. Rossetti, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE McLAREN delivered the judgment of the court.
Justices Jorgensen and Brennan concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The evidence was sufficient to convict the defendant of failing to report two motor vehicle accidents within one-half hour where he had ample opportunity to do so despite being arrested within the deadline, the defendant failed to establish that he was denied effective assistance of counsel by eliciting alleged damaging testimony during cross-examination because the defendant failed to show that the testimony caused him prejudice, and we decline to address the defendant's ineffective assistance of counsel claim regarding counsel's failure to introduce an audio recording because this claim relies on matters outside of the record. The trial court is affirmed.

¶ 2    After a bench trial, the trial court found defendant, Cornell A. Conely, guilty of attempt first-degree murder (720 ILCS 5/8-4(a), 9-1(a)(1) (West 2016)) and three counts of failing to report

an accident involving personal injury within one-half hour (625 ILCS 5/11-401(b) (West 2016)). The trial court sentenced defendant to ten years' imprisonment on the attempt first-degree murder conviction and five years' imprisonment on the failing to report an accident involving personal injury convictions, to be served consecutively. In this appeal, defendant argues, 1) that his convictions for failing to report an accident involving personal injury must be reduced from a Class 2 to a Class 4 felony because the police had defendant in custody within one-half hour of the accidents, and 2) he received ineffective assistance of counsel where defense counsel elicited damaging testimony during cross-examination and defense counsel failed to present an impeaching audio recording of the victim. For the following reasons, we affirm.

¶ 3                                  I. BACKGROUND

¶ 4                                    A. Overview

¶ 5     In April 2017 defendant lived in Kenosha, Wisconsin, with Malia Terry and their infant daughter, Honesty, and Malia's two-year-old daughter, Asariah. Defendant was not Asariah's father. On April 11, 2017, defendant and Malia drove to the home of Malia's mother, Tasha Terry, in Zion, Illinois, to drop off the two girls. At some point, Malia's sister, Sikaya Williams, and defendant argued, and, as Sikaya stood in front of the car, defendant ran over her, resulting in serious injuries. Defendant then drove away from the scene and entered a busy intersection, failing to stop at a stop sign. Defendant hit a Toyota Corolla which then struck a truck. This accident resulted in injuries. Defendant drove off, parked his car nearby and began walking. A short time later, a police officer approached defendant and then transported him to the police station.

¶ 6     The State charged defendant with multiple offenses, including, attempt first-degree murder of Sikaya (count one) and three counts of failing to report the two accidents involving personal injuries within 30 minutes of the accidents pursuant to section 11-401(b) of the Illinois Vehicle

Code (625 ILCS 5/11-401(b) (West 2016)) (counts two-four). Count two related to the "accident" involving personal injury to Sikaya. Counts three and four related to the accident involving personal injuries to Carole and John Thomas, respectively, occurring near the intersection of Route 173 and Gilead Avenue.

¶ 7                                          B. Trial

¶ 8      We summarize the relevant evidence from defendant's bench trial. On April 11, 2017, Malia had to work so she planned on bringing her daughters to her mother's house. Malia's sister, Sikaya, lived at Tasha's house with her own two children. Malia took both girls inside Tasha's house hoping that Tasha and Sikaya would watch both girls. But Tasha wanted to watch only Asariah and not the infant, Honesty, because Tasha planned to take the children to the mall. Malia and defendant began driving back to Kenosha with Honesty when defendant became upset that the girls were separated, so they drove back to Tasha's house.

¶ 9      According to Sikaya, Malia told Tasha that "Asariah couldn't stay because we were not taking Honesty [and defendant] said we were playing favorites towards the girls." Malia packed up Asariah's things and went outside. Sikaya followed Malia outside and approached defendant. Defendant got out of the car, and he and Sikaya argued. Malia and Asariah got back into the car, and defendant got into the driver's seat and began to drive away slowly. Sikaya walked alongside the car as she and defendant continued to argue. Defendant made a U-turn which positioned the car so that Sikaya was in front of it. Sikaya testified that defendant warned her that he was going to run her over. Defendant then ran Sikaya over with the car.

¶ 10      Malia testified that when she came back out of Tasha's house, defendant and Sikaya were arguing. Malia put Asariah in the car and got into the passenger seat. Defendant was in the driver's seat. Defendant drove away but then turned around. Defendant was upset so he went back to where

Sikaya was standing, and they continued to argue. Defendant told Sikaya to "move" and then "ran her over." Defendant drove off and then stopped the car and told Malia to take Asariah and get out of the car.

¶ 11    At about 9. a.m. on the day of the incident, Carey Lancour, a home inspector, was working about one-half a block away near Galilee and 31st Streets in Zion. Lancour heard screaming and yelling and saw a car in the middle of the street and a young woman standing in front of a car. Lancour testified that the car "started speeding up. The young lady put her hand on [the] front of the car, and the car started moving faster and faster and faster." Thereafter a fence obstructed Lancour's view. But Lancour heard tires squeal and he heard "clunk, clunk, clunk," so he called 9-1-1. Lancour went towards the scene, found a young lady lying in the grass and held her hand. It took five to ten minutes until either an ambulance or the police first arrived at the scene.

¶ 12    As a result of being struck by the car defendant drove, Sikaya was in the hospital for one and one-half weeks with severe and life-threatening injuries. Sikaya suffered severe trauma, road-rash abrasions, tire marks, head injury, fractured ribs, a collapsed lung, broken pelvis, and a lacerated liver. The lacerations to her liver were graded four out of six with a potential mortality rate of 40-60 percent.

¶ 13    David Litchfield, a truck driver, testified that, on the day of the incidents, he was driving on Route 173 in Zion. Litchfield's dashcam captured the moment a silver car driven by defendant crossed Route 173 at the intersection with 21st Street. Defendant failed to stop at the stop sign and clipped the left rear fender of a Toyota Corolla that was in the lane opposite of Litchfield's truck. The Corolla, driven by Carole Thomas, spun around before hitting the front of Litchfield's truck. After the collision, defendant's car slowed down and defendant looked in Litchfield's direction,

but defendant's car never stopped. Police arrived at the scene within two to three minutes. Within one-half hour Litchfield saw defendant's car on a tow truck but did not see defendant.

¶ 14    Carole Thomas testified that she was driving the Corolla that was struck by defendant's car and that her husband was a passenger. Due to the accident, she suffered injuries to her shoulder and had bruising on both legs. Carole's husband suffered bruised ribs, legs, and arms.

¶ 15    Zion Police Officer David Gort testified that he was on patrol at the time of the incidents. At approximately 9:30 a.m. Gort was dispatched to the scene where defendant ran over Sikaya. Approximately one or two minutes later, Gort was dispatched to another location in Zion. Gort was told that defendant's vehicle had been located and that he was walking nearby on Hermon Avenue. At approximately 9:35 a.m. Gort arrived at Hermon and 18th Street and saw defendant walking. Gort asked defendant his name and defendant replied, stating his name. Gort then asked defendant "if he had just gotten out of the car," and defendant replied, "What car?" Defendant did not tell Gort anything about any car crashes or accidents. At approximately 9:37 Gort placed defendant in custody and transported him to the Zion Police Department. The drive took between two and three minutes. After the 10-minute booking process was completed, defendant was placed in a holding cell to await questioning. Approximately 15 to 20 minutes passed from the time Gort first encountered defendant until he was placed in the holding cell.

¶ 16    Zion Police Detective Kyle Helgesen testified that he interviewed defendant at around 3:10 p.m. on the day of the incidents. A recording of the interview was introduced at trial. During the interview defendant said that he thought Tasha was going to watch both Honesty and Asariah. In the past Tasha had taken only Asariah, who was not defendant's biological daughter, and this made him feel like Malia's family had something against him. Because of the disrespect defendant felt, he decided to keep both girls. As defendant waited in the car for Malia to return with Asariah,

Tasha, Sikaya, and Sikaya's brother came outside. Sikaya opened defendant's door, and they began arguing. When Malia returned with Asariah, defendant got into the driver's seat of the car. Defendant was trying to keep from getting stabbed by Sikaya's brother who had two knives and scissors. During the interview defendant removed his shirt and showed Detective Helgesen where he had been scratched. Defendant started to pull the car away and then he did a U-turn, which caused Sikaya to try again to pull his door open. Malia recoiled from Tasha, who was trying to pull her out of the car. When Malia recoiled, she landed on defendant's lap, forcing a brief acceleration while defendant's hands were off the steering wheel. Defendant denied driving fast enough to force Sikaya to go underneath the car. Defendant let Malia and the girls out of the car and left the area. The brakes failed as he approached the intersection with Route 173.

¶ 17    Defendant told Helgesen that he "definitely" caused the crash with the Toyota Corolla because the brakes on his car were not working properly. Defendant pulled his car over shortly after the accident, but he did not run away. Defendant admitted that he replied, "What car?" when asked if he had been driving the damaged vehicle.

¶ 18    The trial court found defendant guilty of, *inter alia*, attempt first-degree murder and three counts of failing to report an accident involving personal injury. Defendant filed a motion for a new trial, which the trial court denied. On July 2, 2018, the trial court sentenced defendant to ten years' imprisonment for the attempt murder conviction and five years' imprisonment for the failure to report conviction, to be served consecutively. On July 5, 2018, defendant filed a motion to reconsider sentence which the trial court denied on July 19, 2018. On July 19, 2018, and August 3, 2018, defendant filed a notice and an amended notice of appeal, respectively.

¶ 19                                II. ANALYSIS

¶ 20                          A. Failure to Report Accident

¶ 21    Defendant argues that the State failed to prove him guilty of failing to report an accident involving personal injury within one-half hour, a Class 2 felony (625 ILCS 5/11-401(b), (d) (West 2016)), because he was in custody before the deadline. Defendant, thus urges us to reduce these convictions to the lesser included offense of leaving the scene of an accident, a class 4 felony (*id*. at § 11-401(a), (c)). The State counters that being detained by the police did not absolve defendant from reporting the accidents within one-half hour.

¶ 22    The issue to be resolved is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *People v. Cunningham*, 212 Ill. 2d 274, 278 (2004). A trier of fact is not required to disregard inferences that flow normally from the evidence before it, nor must the trier of fact search out all possible explanations consistent with innocence and raise those explanations to a level of reasonable doubt. *People v. Eubanks*, IL 123525, ¶ 95. We will not substitute our judgment for that of the trier of fact. *People v. Ortiz*, 196 Ill. 2d 236, 259 (2001). A reviewing court must construe all reasonable inferences from the evidence in favor of the prosecution. *People v. Davison*, 233 Ill. 2d 30, 43 (2009).

¶ 23    Section 11-401 of the Illinois Vehicle Code requires, in relevant part:

> "Motor vehicle accidents involving death or personal injuries.
>
> (a) The driver of any vehicle involved in a motor vehicle accident resulting in personal injury to or death of any person shall immediately stop such vehicle at the scene of such accident, or as close thereto as possible and shall then forthwith return to, and in every event shall remain at the scene of the accident until the requirements of Section 11-403 have been fulfilled. Every such stop shall be made without obstructing traffic more than is necessary.

(b) Any person who has failed to stop or to comply with the requirements of paragraph (a) shall, as soon as possible but in no case later than one-half hour after such motor vehicle accident, or, if hospitalized and incapacitated from reporting at any time during such period, as soon as possible but in no case later than one-half hour after being discharged from the hospital, report the place of the accident, the date, the approximate time, the driver's name and address, the registration number of the vehicle driven, and the names of all other occupants of such vehicle, at a police station or sheriff's office near the place where such accident occurred. No report made as required under this paragraph shall be used, directly or indirectly, as a basis for the prosecution of any violation of paragraph (a).

\* \* \*

(c) Any person failing to comply with paragraph (a) shall be guilty of a Class 4 felony.

(d) Any person failing to comply with paragraph (b) is guilty of a Class 2 felony if the motor vehicle accident does not result in the death of any person. \*\*\*" 625 ILCS 5/11-401 (West 2016).

¶ 24    In *People v. Moreno*, 2015 IL App (2d) 130581, the defendant made a similar argument to that made by defendant here. The defendant argued on appeal that the evidence was insufficient to prove him guilty of failure to report an accident at a police station within one-half hour under section 11-401(b) because the police detained him at the strip mall within the deadline. *Id.* ¶ 20. We rejected the defendant's argument, reasoning that section 11-401(b) did not provide any excuse for the failure to comply other than "where a defendant is hospitalized and incapacitated," and then he must "report the accident within 30 minutes after leaving the hospital." *Id.* ¶¶ 21-22. Further,

we agreed with the trial court that the evidence supported its finding that the defendant "knew of the accident, yet made no attempt at all to report his involvement, *even after being arrested* for obstruction of justice[.]" (Emphasis added.) *Id.* ¶ 21.

¶ 25 Here, the evidence was easily sufficient to establish defendant's guilt beyond a reasonable doubt. It was clear from the evidence that defendant knew of the accidents and made no attempt to report his involvement. See *id.* After defendant ran over Sikaya with the car at approximately 9:25 a.m., defendant drove off, ran a stop sign and struck a Corolla at a busy intersection. That second accident occurred at approximately 9:30 a.m. Defendant then drove off again, parked his car in a residential area, and began walking until he came upon police officer Gort at approximately 9:35 a.m. Gort asked defendant if he had just gotten out of his car and he replied, "What car?" At about 9:37 a.m. Gort transported defendant to the Zion Police Department, where he was processed and locked in a holding cell 15 to 20 minutes after Gort initially made contact with him. Thus, defendant had 20-25 minutes before he was placed in a holding cell to report the accidents but failed to do so. Although defendant spoke about the accidents to police about five hours after they occurred, this was not within the one-half hour time period required by section 11-401(b) of the Illinois Vehicle Code. Defendant's proposed excuse that he could not report within the required time because he was in lock up is not included in section 11-1401(b), and we rejected a similar argument in *Moreno*. See *Moreno*, 2015 IL App (2d) 130581, ¶¶ 21-22. Therefore, there was clearly sufficient evidence for a rational trier of fact to conclude beyond a reasonable doubt that defendant did not report the accidents within one-half hour.

¶ 26 Defendant also argues that, under these facts, the trial court's finding him guilty of violating section 11-401(b) punishes him for exercising his right against self-incrimination under the fifth amendment to the United States Constitution. U.S. Const., amend. V. Initially, we note

that defendant failed to raise this claim either during trial or in his posttrial motion. Therefore, defendant has forfeited or procedurally defaulted our review of this issue. See *People v. Johnson*, 238 Ill. 2d 478, 484 (2010) (citing *People v. Enoch*, 122 Ill. 2d 176, 186 (1988)). Further, defendant does not argue that this alleged error constitutes plain error. A defendant who fails to argue for plain-error review obviously cannot meet his burden of persuasion. *People v. Hillier*, 237 Ill. 2d 539, 546 (2010). Because defendant failed to present an argument on how either of the two prongs of the plain-error doctrine is satisfied, he forfeited plain-error review. *Id.* Thus, we need not address this argument.

¶ 27    However, regardless of defendant's forfeiture, his as-applied challenge to section 11-401(b) on fifth amendment grounds is without merit. The fifth amendment to the United States Constitution states that "[n]o person * * * shall be compelled in any criminal case to be a witness against himself." U.S. Const., amend. V. A communication must be testimonial, incriminating, and compelled in order to qualify for the fifth amendment protection. *Hiibel v. Sixth Judicial District Court of Nevada*, 542 U.S. 177, 189 (2004). The privilege against compulsory self-incrimination "protects against any disclosures that the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might so be used." *Hiibel*, 542 U.S. at 190.

¶ 28    Defendant was convicted under section 11-401(b) of the Illinois Vehicle Code. Section 11-401(b) requires drivers involved in a vehicular collision to report the accident to the police and requires the disclosure of the following information: the name of the driver, the driver's address, the vehicle registration number, the names of the passengers, and the place, date, and time of the accident. 635 ILCS 5/11-401 (West 2016).

¶ 29    In *People v. Brady*, 369 Ill. App. 3d 836 (2007), the defendant driver was drag racing with another vehicle when the other vehicle crashed, killing the driver. *Id*. at 839. The defendant driver left the scene of the accident and did not report the accident to the police within the statutory time. *Id*. at 840. The defendant was convicted of drag racing and leaving the scene of a motor vehicle accident involving death. *Id*. at 842. On appeal, the defendant argued that section 11-401(b) was unconstitutional as applied to his conduct because it violated his constitutional privilege against self-incrimination. *Id*. at 849-50. The defendant argued that compliance with section 11-401(b) would have been tantamount to an acknowledgment that he was involved in an accident, which in turn could have led to a reckless driving charge for drag racing. *Id*. at 850-51. Like defendant here, the *Brady* defendant directed the court to *Hiibel*, wherein the Supreme Court rejected an as-applied challenge to a Nevada law requiring subjects of *Terry* stops to state their names. *Hiibel*, 542 U.S. at 190. The appellate court held that the Hiibel's " 'refusal to disclose his name was not based on any articulated real and appreciable fear that his name would be used to incriminate him, or that it "would furnish a link in the chain of evidence needed to prosecute him.'" *Brady*, 369 Ill.App.3d at 850-51, quoting *Hiibel*, 542 U.S. at 190, quoting *Hoffman v. United States*, 341 U.S. 479, 486 (1951).

¶ 30    The *Brady* court also found that compliance with section 11-401(b) would not have incriminated the defendant in a criminal proceeding on a separate offense, as that statute "does not concern itself with how the accident came about" and does not require a defendant to make any statement to the police regarding the cause of the accident or the events surrounding it. *Brady*, 369 Ill. App. 3d at 852-53 (quoting *People v. Bennett*, 329 Ill. App. 3d 502, 517 (2002)). The *Brady* court rejected the idea that a person who admits involvement in an accident also admits to causing the accident. *Brady*, 369 Ill. App. 3d at 852. Further, the *Brady* court, citing *Hiibel*, held that the

information sought under subsection (b) was neither testimonial nor communicative, two requisites to trigger fifth amendment protection. *Id.* at 853. As such, the *Brady* court found that no fifth amendment privilege was implicated. *Id.* at 852.

¶ 31     We determine there is no reason to depart from the reasoning in *Brady*. Section 11-401(b) requires only identification information, and not factual disclosures. Complying with subsection (b) requirements would not have put defendant in the position of admitting fault. See *Brady*, 369 Ill. App. 3d at 851-52, quoting *People v. Kerger*, 191 Ill. App. 3d 405, 410-11 ("a person can be 'involved in a motor vehicle accident' even where he or she was not a cause of the accident. It is unnecessary to determine, for purposes of deciding whether a defendant was involved in a motor vehicle accident, whether the defendant caused or was at fault for the accident"). Simply identifying himself as a driver involved in an accident involving personal injuries, as required by the statute, would not have been a link in the chain of evidence needed to convict defendant of a separate offense, where mere driving and identity did not form the basis of any criminal charges in this case. See *Brady*, 369 Ill.App.3d at 850-51. Section 11-401 requires only that identification information be provided following an accident. Accordingly, defendant has failed to establish that, under the circumstances of this case, his compliance with section 11-401(b) would have provided the State with incriminating information in violation of his fifth amendment protection from self-incrimination.

¶ 32     Further, the statute at issue precludes use of the information to prove the predicate offense directly or indirectly. See 625 ILCS 5/11-401(a), (b) (West 2016). Leaving the scene of an accident is the predicate offense of failure to report; the offense at issue here. See *id*. The purpose of section 11-401 of the Illinois Vehicle Code,

" 'is to inform those who have been injured or damaged by a hit-and-run driver of the driver's identity. This is accomplished by encouraging such drivers to take advantage of a second chance to come forward and reveal their identity. Those who do come forward will not be prosecuted for a felony, and their statements will not be used against them if they are prosecuted for the misdemeanor of leaving an accident scene.' " *Cesena v. Du Page County*, 145 Ill. 2d 32, 41 (1991), quoting *People v. Young*, 92 Ill. 2d at 236, 240 (1982). Therefore, defendant would not be incriminating himself for any violations contained in the section.

¶ 33                 B. Ineffective Assistance of Counsel

¶ 34     Defendant asserts that he received ineffective assistance of counsel where defense counsel 1) elicited damaging testimony during cross-examination of Sikaya and Lancour, and 2) failed to present an impeaching audio recording of Sikaya.

¶ 35     Defendant first contends that his defense counsel rendered ineffective assistance while cross-examining Sikaya because her answer damaged defendant's theory that he did not intentionally run over Sikaya; rather he did it accidentally. During cross-examination, defense counsel elicited Sikaya's damaging testimony that "two or three weeks ago" defendant threatened to "fight" her.

¶ 36     To establish that trial counsel was ineffective, the defendant must satisfy the standard articulated in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Henderson*, 2013 IL 114040, ¶ 11. Under this standard, a defendant must show that his counsel's performance was deficient and the deficiency prejudiced him. *People v. Valdez*, 2016 IL 119860, ¶ 14. More specifically, the "defendant must demonstrate that counsel's performance fell below an objective standard of reasonableness, and a reasonable probability exists that, but for counsel's

unprofessional errors, the result of the proceeding would have been different." *Henderson*, 2013 IL 114040, ¶ 11. Both prongs of the *Strickland* test must be met, and thus, the failure to establish either prong precludes a finding of ineffective assistance of counsel. *Id.*

¶ 37 Even if defense counsel had not elicited Sikaya's damaging testimony, there is no reasonable probability that the trial court would have accepted the defendant's accident theory. There was overwhelming evidence that defendant acted intentionally when he ran Sikaya over. While finding defendant guilty of attempt first-degree murder, the trial court recounted the testimony that defendant and Sikaya argued, defendant drove away, he was upset and drove back to where Sikaya was standing, and, while Sikaya was in front of the car, defendant told her to move and that he was going to run her over. Defendant drove slowly and then sped up and ran her over. Thus, defendant has failed to establish that, but for counsel's alleged unprofessional error, the result of the proceeding would have been different. *Henderson*, 2013 IL 114040, ¶ 11.

¶ 38 The same is true for defendant's next claim of ineffective assistance of counsel. Defendant contends that counsel was ineffective because he elicited damaging testimony from Lancour. In response to defense counsel's question, "Did you ever hear tires squeal?" Lancour replied, "I heard a little bit of squeals from the tires." However, defendant fails to establish that this testimony prejudiced him. During direct examination Lancour testified that he saw Sikaya standing in front of the car, the car sped up, Sikaya put her hands on the front of the car, and the car started moving faster. Lancour then heard "clunk, clunk, clunk," called 911, and went to Sikaya who was lying in the grass. Thus, Lancour's testimony regarding "squeals from the tires" was cumulative evidence that defendant accelerated the car while Sikaya stood directly in front of it. As such, defendant has failed to establish that, but for counsel's alleged unprofessional errors, the result of the proceeding would have been different. See *id.*

¶ 39 Lastly, defendant argues that defense counsel was ineffective because he failed to introduce an exculpatory audiotape of Sikaya who allegedly "admitted to jumping in front of [defendant's] car" to cause herself injuries.

¶ 40 We note that the audio recording at issue is not contained in the record on appeal. Further, during the hearing on defendant's posttrial motion, defense counsel and the prosecutor disagreed as to the contents of the audio recording. Defense counsel stated that the recording "would indicate that [Sikaya's] brother talked to [Sikaya], told [Sikaya] that she jumped in front of the car to cause herself injuries." Defense counsel also told the court, "[t]he State had this [recording] but they chose not to bring it forward." The prosecutor told the court that the audio recording was "irrelevant and had nothing to do with the date of the injury."

¶ 41 We conclude, on the record before us, it is impossible to determine whether defendant was prejudiced by counsel's failure to introduce the audio recording because it is not contained in the record and defense counsel and the State disagree regarding its contents. Our analysis in this matter is guided by the Illinois Supreme Court's opinion in *People v. Veach*, 2017 IL 120649, ¶ 46, where the court noted that "ineffective assistance of counsel claims may sometimes be better suited to collateral proceedings but only when the record is incomplete or inadequate for resolving the claim." Because the audio recording is not contained in the record, we do not know whether it would have been beneficial to defendant. Thus, we cannot determine, based on this record, whether the result of the proceeding would have been different. Accordingly, we decline to adjudicate defendant's claim of ineffective assistance due to an insufficient record.

¶ 42                                   III. CONCLUSION

¶ 43 The judgment of the circuit court of Lake County is affirmed.

¶ 44 Affirmed.