NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 230750-U

NO. 4-23-0750

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
February 29, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* S.R., H.M., T.M., and I.M., Minors | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Adams County |
| Petitioner-Appellee, | ) | No. 21JA78 |
| v. | ) | |
| Ted M., | ) | Honorable |
| Respondent-Appellant). | ) | John C. Wooleyhan, |
| | ) | Judge Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Justices Doherty and DeArmond concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The appellate court granted appellate counsel's motion to withdraw and affirmed the trial court's judgment terminating respondent's parental rights, as no issue of arguable merit existed for counsel to raise on appeal.

¶ 2       Respondent, Ted M., appeals from the trial court's order terminating his parental rights to his minor children, S.R., H.M., T.M., and I.M. The children's mother also had her parental rights terminated, but she is not a party to this appeal, and her parental rights are not at issue here. The court appointed appellate counsel to represent respondent.

¶ 3       Appellate counsel seeks to withdraw pursuant to the procedure in *Anders v. California*, 386 U.S. 738 (1967), contending that any argument she might make would be meritless. Counsel indicates she notified respondent of this determination. We gave respondent an

opportunity to respond to the motion. Respondent filed no response. We grant counsel's motion to withdraw and affirm the trial court's judgment.

¶ 4                                    I. BACKGROUND

¶ 5        On November 3, 2021, the State filed a petition for adjudication of wardship alleging, under six counts against respondent, that the children were neglected and/or abused under section 2-3(1)(b) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3(1)(b) (West 2020)) in that their environment was injurious to their welfare. First, respondent's parental rights were terminated in another juvenile court case due to his failure to make reasonable efforts to correct the conditions that were the basis for removal of the child. Second, respondent committed the offense of domestic battery against S.R. on January 27, 2020, resulting in intact services, and respondent pleaded guilty to felony domestic battery. Third, on April 17, 2021, T.M. accessed and consumed respondent's edible cannabis, resulting in T.M.'s hospitalization and an Illinois Department of Children and Family Services (DCFS) indication for neglect. Fourth, on August 8, 2021, while intoxicated on cannabis, respondent failed to supervise H.M., who was located near a street, resulting in a DCFS indication for inadequate supervision. Fifth, on September 15, 2021, respondent threw a bottle at the children's mother, which struck H.M. in the chin, causing injury, and both parents were indicated for domestic violence. Sixth, between October 22 and October 24, 2021, respondent committed domestic battery against the children's mother while the children were present.

¶ 6        On January 13, 2022, the trial court entered an adjudicatory order based on respondent's admissions to the petition. On March 3, 2022, the court entered a dispositional order finding respondent to be "unable to care for, protect, train, educate, supervise or discipline the minor[s] and placement with him is contrary to the health, safety and best interest of the minor[s]

because [*sic*]." The court did not make a factual finding to fill in the lines after "because" on the dispositional order.

¶ 7    On May 5, 2023, the State filed a petition to terminate respondent's parental rights and appoint a guardian with the power to consent to the adoption of the children. The petition alleged that respondent was an unfit person under the Adoption Act (750 ILCS 50/1D (West 2022)) because, *inter alia*:

> "(a) He has failed to make reasonable efforts to correct the conditions which were the basis for removal of the child from the parent; [and]
>
> (b) He has failed to make reasonable progress toward the return of the minor within any 9-month time period after an adjudication of neglected minor under the Juvenile Court Act."

¶ 8    The petition alleged that it was in the children's best interest that all parental rights be terminated. The State identified the "nine-month" periods of (1) February 13, 2022, to November 13, 2022 and (2) November 14, 2022, to May 5, 2023.

¶ 9    On August 24, 2023, the State filed an amended motion for termination of parental rights, correcting the second 9-month period to allege November 14, 2022, to August 14, 2023.

¶ 10    On August 30, 2023, the trial court held a bifurcated hearing on the motion for termination of parental rights. On the issue of parental unfitness, child welfare specialist Jennifer Spohr, with Chaddock Foster and Adoption, testified for the State. She testified that as a case manager, she managed the foster care case of the children starting around September 2022.

¶ 11    Spohr testified that respondent's service plan from April to November 2022, required him to engage in "domestic violence services, substance abuse counseling, mental health counseling, parent and visitation [*sic*], housing and income, and then cooperation with the agency."

She testified that during this time period, respondent (1) failed to complete the individual portion of the parenting class, (2) successfully completed the domestic violence task, (3) had no domestic violence incidents with the other parent of the children, (4) cooperated with visitation, but also failed to inform her of an irregular work schedule, leading to missed visits, (5) engaged in mental health services, (6) completed a substance abuse evaluation, (7) had appropriate but unstable housing, and (8) had unstable employment.

¶ 12    Spohr testified that respondent's next service plan covered November 2022 to April 25, 2023. She testified that there were three domestic violence events in December 2022. Based on these events, Spohr recommended that respondent reengage in domestic violence services. Respondent did not follow the recommendation to reengage in domestic violence services. He was rated unsatisfactory on the domestic violence task. During this time period, Spohr testified that respondent (1) discussed case-related information with the visitation worker, (2) did not provide food for the children at visits, (3) had a positive test for methamphetamine, (4) disclosed that he had been around people who used methamphetamine, (5) had a subsequent negative test for methamphetamine, (6) did not participate in mental health counseling, (7) did not contact Spohr for a two-and-a-half-month period, and (8) was employed.

¶ 13    On cross-examination, Spohr acknowledged that respondent satisfactorily completed some subtasks in the service plan, which indicated some progress, even where he ultimately did not complete the task satisfactorily.

¶ 14    Next, Kim Tonozzi testified for the State. She had been a supervisor at Chaddock Foster and Adoption since April 2018. She began her interactions with the children and respondent in November 2021. She testified that she approved the service plan prior to Spohr's work on the case and confirmed the contents of the service plan were consistent with Spohr's testimony.

¶ 15       After hearing testimony and arguments, the trial court found that the State proved by clear and convincing evidence the allegations of unfitness. The court immediately turned to the best interest hearing.

¶ 16       Spohr again testified for the State. She testified that (1) the children were placed together with two foster parents, (2) the children were bonded with the foster parents, (3) the foster parents meet all of the children's needs, (4) the foster parents enrolled the children in educational programs, (5) the foster parents ensured the children attended their medical appointments, and (6) the foster parents signed a permanency agreement.

¶ 17       The State argued it was in the children's best interest to terminate respondent's parental rights by highlighting the foster parents' (1) bond with the children, (2) agreement to provide a permanent home through adoption, and (3) meeting the children's health and educational needs.

¶ 18       Respondent asked for a return home goal and no termination of his rights.

¶ 19       The trial court ruled that the State established it was in the children's best interest to terminate parental rights, given the foster parents were bonded with the children and met all of their needs. The court terminated respondent's parental rights.

¶ 20       This appeal followed.

¶ 21                                    II. ANALYSIS

¶ 22       We note that this is an accelerated appeal under Illinois Supreme Court Rule 311(a) (eff. July 1, 2018). Under this rule, this court is required to issue its decision within 150 days after the filing of the notice of appeal unless there has been "good cause shown." Ill. S. Ct. R. 311(a)(5) (eff. July 1, 2018). Here, the record was originally unclear as to whether respondent was served with, or received, notice of his right to file a response to his attorney's motion for leave to withdraw

as counsel. This court ordered appellate counsel to send notice to respondent at his last known mailing address by December 28, 2023, advising him of his opportunity to file a written response to her motion within 21 days and raise in this court any issues he deemed reviewable.

¶ 23 Appellate counsel complied with our order. Respondent did not file a response. Based on respondent's August 31, 2023, filing of his notice of appeal, this court's disposition was due to be filed by January 29, 2024, which has passed. However, as our consideration of this appeal was delayed by the need to order counsel to provide respondent with proper notice, we conclude there is good cause for issuing our disposition after the 150-day deadline.

¶ 24 Appellate counsel moves for leave to withdraw. Counsel supports her motion with a memorandum of law providing a statement of facts. In the memorandum, counsel states she considered raising four issues on respondent's behalf: (1) whether the trial court's finding that respondent failed to make reasonable efforts or progress was against the manifest weight of the evidence, (2) whether the court erred in admitting certain evidence, (3) whether respondent's counsel was ineffective, and (4) whether the court erred in finding it was in the best interest of the children to terminate respondent's parental rights. Counsel explains why she concluded that no issue has arguable merit.

¶ 25 A. Reasonable Efforts and Progress

¶ 26 The first issue counsel considered was whether the trial court properly found respondent unfit. The question of whether the court properly found respondent unfit for failure to make reasonable efforts and progress to correct the conditions that led to the removal of the children and towards the return of the children is reviewed under the manifest weight of the evidence standard. *In re Veronica J.*, 371 Ill. App. 3d 822, 828 (2007). A court's finding of parental unfitness can be affirmed on one or more of the statutory grounds under section 1(D) of the

Adoption Act (750 ILCS 50/1(D) (West 2022)). *Veronica J.*, 371 Ill. App. 3d at 828. Section 1(D)(m) of the Adoption Act contains two separate grounds, either of which can serve as a basis for a finding of unfitness. 750 ILCS 50/1(D)(m) (West 2022). Subsection (i) deals with a parent's failure to make "reasonable efforts" to correct the conditions that were the basis for the minor's removal; subsection (ii) deals with a parent's failure to make "reasonable progress" toward the return of the minor during "any 9-month period" following the adjudication of neglect. 750 ILCS 50/1(D)(m)(i)-(ii) (West 2022). "A service plan is an integral part of the statutory scheme for measuring progress toward the goal of reunification of the parent and the child." *In re Nevaeh R.*, 2017 IL App (2d) 170229, ¶ 23.

¶ 27   Here, the only relevant testimony and evidence presented at the unfitness portion of the termination hearing showed that respondent initially completed his service plan goals during the first nine-month period. During the next nine-month period, respondent (1) was charged with three new domestic violence cases involving the children's mother, (2) did not communicate with the caseworker for a two-and-a-half-month period, (3) talked to the visitation worker about case-related information, (4) did not provide food for the children at visits, (5) tested positive for methamphetamine, (6) disclosed that he was around people who used methamphetamine, (7) did not participate in mental health counseling, and (8) did not engage in domestic violence services. Respondent presented no evidence or testimony.

¶ 28   The trial court did not err where it found respondent did not make reasonable efforts. During the second nine-month period, respondent failed to meet the requirements of his service plan. Also, the court did not err where it found respondent did not make reasonable progress since he was objectively moving away from the goal of reunification by committing three new

domestic violence acts against the children's mother and being around people who use methamphetamine.

¶ 29                                    B. Evidentiary Issues

¶ 30            The second issue counsel considered was whether the trial court erred in taking judicial notice of permanency reports and admitting respondent's service plan into evidence. When a respondent fails to object to the alleged error and fails to raise it in a written posttrial motion, the respondent forfeits the issue for appellate review. *In re M.P.*, 2020 IL App (4th) 190814, ¶ 44. Respondent forfeited his right to allege error in the admission of evidence since he did not raise the issue below.

¶ 31                                    C. Ineffective Assistance

¶ 32            Counsel also considered whether respondent's trial counsel was ineffective for failing to object to the admission of the permanency reports and service plan. Ineffective assistance of counsel claims are evaluated under the two-prong test set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Henderson*, 2013 IL 114040, ¶ 11. "Under this test, a defendant must demonstrate that counsel's performance fell below an objective standard of reasonableness, and a reasonable probability exists that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Henderson*, 2013 IL 114040, ¶ 11. Here, the State presented extensive testimony from the caseworker, Spohr, to show that respondent failed to make reasonable efforts and progress, which substantially mirrored the content contained in the permanency reports and service plan. The outcome would not have been different if counsel objected to the admission of the permanency reports and service plan. Respondent can raise no nonfrivolous claim of ineffective assistance of counsel.

¶ 33                                    D. Best Interest

¶ 34    The final issue counsel considered was whether the trial court properly found that it was in the children's best interest to terminate respondent's parental rights. In matters involving best interest determinations, the trial court receives broad discretion and great deference. *In re D.D.*, 2022 IL App (4th) 220257, ¶ 28. A reviewing court will not disturb the trial court's best interest findings unless they are contrary to the manifest weight of the evidence, meaning that the opposite conclusion is clearly apparent. *D.D.*, 2022 IL App (4th) 220257, ¶ 28. While all statutory factors must be considered when determining whether it is in a child's best interest to terminate parental rights, no single factor is dispositive. *In re Ca. B.*, 2019 IL App (1st) 181024, ¶ 31. When determining whether termination of parental rights is in the child's best interest, the court's best interest determination need not contain an explicit reference to each of the statutory factors that it must consider. *In re M.W.*, 2019 IL App (1st) 191002, ¶ 61. At the best interest hearing, "the parent's interest in maintaining the parent-child relationship must yield to the child's interest in a stable, loving home life." *In re D.T.*, 212 Ill. 2d 347, 364 (2004).

¶ 35    Here, the only testimony presented was that of the caseworker on the bond the children had with the foster parents and the stable home they provided, where the children's needs were met. This evidence was unrefuted, and the trial court could reasonably rely upon it to determine that it was in the children's best interest to terminate respondent's parental rights. Accordingly, the court did not err in determining it was in the children's best interest to terminate respondent's parental rights.

¶ 36    After examining the record, we agree that the four issues counsel identified lack arguable merit, and we have identified no other issues of arguable merit. We therefore grant counsel's motion to withdraw and affirm the trial court's judgment.

¶ 37                                III. CONCLUSION

- 9 -

¶ 38    For the reasons stated, we grant appellate counsel's motion to withdraw and affirm the trial court's judgment.

¶ 39    Affirmed.