NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 250711-U

NO. 4-25-0711

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
June 18, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Henry County |
| RAHSAAN M. STRAWDER, | ) | No. 22CF27 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Daniel Dalton, |
| | ) | Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Presiding Justice Steigmann and Justice DeArmond concurred in the judgment.

**ORDER**

¶ 1     *Held*: The appellate court affirmed, finding defendant's claim of ineffective assistance
of counsel for failing to call an expert rebuttal witness would be better suited for
collateral review.

¶ 2     Defendant, Rahsaan M. Strawder, was convicted following a bench trial of first

degree murder (720 ILCS 5/9-1(a)(2) (West 2022)) and aggravated battery (*id.* § 5/12-3.05(b)(1))

for causing the death of D.G. (born September 2020). On appeal, he argues his trial counsel

rendered ineffective assistance by failing to call an expert rebuttal witness. We affirm.

¶ 3                          I. BACKGROUND

¶ 4     In February 2022, defendant was charged by information with two counts of first

degree murder (*id.* § 9-1(a)(2)) and two counts of aggravated battery (*id.* § 5/12-3.05(b)(1))

related to the death of D.G. Defendant waived a jury trial, and the matter proceeded to a bench

trial in March 2025. Because defendant does not challenge the sufficiency of the evidence, we

summarize only the facts necessary for the sole issue on appeal.

¶ 5            At trial, Darcie M., D.G.'s mother, testified she had been in a dating relationship with defendant for three months. On January 26, 2022, Darcie was spending the night at defendant's home with D.G. and two of her other children. The following morning, January 27, she took her other two children to school and left D.G. at defendant's home. When she returned to defendant's home, she said D.G. was still asleep on defendant's couch. Darcie attempted to wake D.G. but "she wouldn't get up, she wouldn't move." Darcie recalled asking defendant, "[W]hat happened?" to which defendant denied anything had occurred while she was gone. She observed a "mark on [D.G.'s] head like she had been hit or something." Defendant and Darcie took D.G. to the hospital.

¶ 6            Dr. Amanda Youmans, a physician specializing in forensic pathology, testified on behalf of the State. Dr. Youmans performed an autopsy on D.G. in February 2022. The parties stipulated to medical records for D.G. showing no evidence of abuse prior to January 27, 2022. Youmans's autopsy report was admitted into evidence without objection. Aside from the injury to D.G.'s head, Youmans stated D.G. was a "healthy, normally well-developed child of 16 months." She concluded D.G. died from "blunt force head trauma, due to physical abuse." Medical records for D.G. included statements indicating D.G.'s head may have bumped into the doorway upon exiting the residence. Youmans disagreed and said D.G. striking her head against a doorway was "not forceful enough to produce the degree of injury" she observed and documented during the autopsy. She explained the blunt force trauma would need to be a "significant force that it would break the skin and cause the underlying hematoma or collection of blood between the skin and the skull." She further explained the cause as "a shaking episode, along with blunt impact to the head." She noted a subdural hematoma, swelling of the brain, and

retinal hemorrhages were "3 diagnoses *** consistent with shaking." She said none of the aforementioned injuries were caused by the emergency medical interventions provided to D.G.

¶ 7        On cross-examination, Youmans stated she had examined the doorway and did not "see anything on there that could correspond to the pattern abrasion" on D.G.'s head. On redirect examination, she said there were no slips or falls documented.

¶ 8        William Borsch testified he shared a jail cell with defendant for a "few months" at the Henry County jail. He denied receiving any promises or consideration in his pending cases in exchange for his testimony. Borsch recalled defendant stating Darcie left defendant's home to drop her children off at school, and defendant awoke to D.G. crying. He "hit [D.G.] with a pillow a couple of times" and "put the pillow over [D.G.] to muffle the sound." "He then picked [D.G.] up by a leg and shook [her], telling [her] to shut the f*** up." He heard a car door when Darcie arrived and tossed D.G. onto the couch and heard "gurgling sounds." Defendant and Darcie had sex. Afterward, he heard Darcie screaming and holding D.G., so they took her to the hospital.

¶ 9        On cross-examination, Borsch recalled his conversation with defendant occurring in June or July 2022. Borsch stated he hoped to receive sentencing leniency for his testimony.

¶ 10        The State rested. Defendant moved for a directed verdict, which the trial court denied.

¶ 11        Defendant rested.

¶ 12        The trial court recounted the evidence that D.G. was "otherwise healthy" at 8:48 a.m. on January 27, 2022, when Darcie took her two other children to school. Defendant was asleep but, at 9:01 a.m., Darcie called defendant, who was awake. The court found Borsch's testimony matched the physical evidence and provided a believable explanation and timeline of defendant's actions and behavior, which, the court found, were consistent with defendant causing

D.G.'s death. The court found defendant not guilty of first degree murder for striking D.G. against a hard surface (count I) but guilty of shaking D.G. so as to create a strong possibility of death (count II). The court found defendant not guilty of aggravated battery regarding striking D.G. against a hard surface (count III) but guilty of aggravated battery for shaking D.G., thereby causing a brain injury (count IV).

¶ 13　　　　Following a hearing in June 2025, the trial court sentenced defendant to 60 years' imprisonment for first degree murder. Defendant subsequently filed a motion to reconsider his sentence, which was denied.

¶ 14　　　　This appeal followed.

¶ 15　　　　　　　　　　　　II. ANALYSIS

¶ 16　　　　On appeal, defendant argues his trial counsel was ineffective for failing to call an expert witness to rebut the testimony of Dr. Youmans and to challenge the unreliability of shaken baby syndrome and the abusive-head-trauma findings.

¶ 17　　　　Specifically, defendant argues his trial counsel's failure to call an expert witness was objectively unreasonable because the State failed to prove D.G.'s cause of death beyond a reasonable doubt. He cites numerous scientific articles, along with several cases from several different jurisdictions discussing the unreliability of shaken baby syndrome and abusive head trauma. He also argues that because the evidence was closely balanced and the trial court relied on Youmans's testimony, counsel's failure to call an expert witness prejudiced him, requiring a new trial.

¶ 18　　　　The State contends, *inter alia*, the record on appeal is insufficient to adjudicate defendant's claim of ineffective assistance of counsel. We agree.

¶ 19　　　　"A claim of ineffective assistance of counsel is evaluated under the two-prong test

- 4 -

set forth in *Strickland v. Washington*, 466 U.S. 668 (1984)." *People v. Henderson*, 2013 IL 114040, ¶ 11. "Under this test, a defendant must demonstrate that counsel's performance fell below an objective standard of reasonableness, and a reasonable probability exists that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* "A defendant's failure to establish either prong of the *Strickland* test precludes a finding of ineffective assistance of counsel." *Id.*

¶ 20       "It is well established that decisions concerning which witnesses to call at trial and what evidence to present on [a] defendant's behalf ultimately rest with trial counsel." (Internal quotation marks omitted.) *People v. Bridges*, 2025 IL App (1st) 241180, ¶ 30. "The selection of an expert witness is a paradigmatic example of the type of 'strategic choic[e]' that, when made 'after thorough investigation of [the] law and facts,' is 'virtually unchallengeable.' " *Hinton v. Alabama*, 571 U.S. 263, 275 (2014) (quoting *Strickland*, 466 U.S. at 690). Accordingly, failure by counsel to call an expert witness is not *per se* ineffective assistance. *People v. Hamilton*, 361 Ill. App. 3d 836, 847 (2005).

¶ 21       The record before this court offers no insight as to whether counsel for defendant contemplated calling an expert rebuttal witness. Moreover, defendant, on appeal, offers nothing by way of what an expert rebuttal witness would say to the specific facts of this case. "For a reviewing court to engage in a meaningful review of whether failing to call an expert witness constituted ineffective assistance of counsel, the testimony of the expert would undoubtedly prove helpful to the disposition of the claim." *People v. Pellegrini*, 2019 IL App (3d) 170827, ¶ 50. Ineffective assistance of counsel claims may sometimes be better suited to collateral proceedings when the record on direct appeal is incomplete or inadequate for resolving the claim. *People v. Veach*, 2017 IL 120649, ¶ 46.

¶ 22 Without knowing whether there was an expert who would have testified and what that testimony would have been, we are incapable of rendering an opinion on whether counsel's performance was deficient or whether the result of the proceedings would have been different. This matter therefore is more appropriate for resolution on collateral review. See *People v. Kindle*, 2021 IL App (1st) 190484, ¶¶ 55-56 (finding the question of whether counsel was ineffective for failing to present testimony was better suited for collateral review because the resolution of the issue depended on facts not in the record).

¶ 23                                        III. CONCLUSION

¶ 24 For the reasons stated, we affirm the trial court's judgment.

¶ 25 Affirmed.