NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 241166-U

NO. 4-24-1166

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
July 16, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Peoria County |
| NISSAN S. BLAKES, | ) | No. 17CF493 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Katherine S. Gorman, |
| | ) | Judge Presiding. |

JUSTICE GRISCHOW delivered the judgment of the court.
Justices DeArmond and Vancil concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court affirmed the first-stage summary dismissal of defendant's postconviction petition because it did not present an arguable basis in law or fact.

¶ 2    Defendant, Nissan S. Blakes, appeals the trial court's first-stage dismissal of his *pro se* petition under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2024)), asserting he set forth an arguable claim that his constitutional right to effective assistance of counsel was violated. We disagree and affirm.

¶ 3    I. BACKGROUND

¶ 4    In June 2017, a grand jury returned a four-count bill of indictment against defendant, charging him with aggravated battery with a firearm (720 ILCS 5/12-3.05(e)(1) (West 2016)), two counts of attempted first degree murder (*id.* § 8-4(a), 9-1(a)(1)), and unlawful possession of a firearm (*id.* § 24-3.1(a)(2)). The charges were based on an incident where

Detective Dave Smith of the Peoria Police Department responded to a call reporting a shooting. Upon arrival, Detective Smith observed LaShawn Jones had been shot in the upper chest and was lying on the ground. Jones told Detective Smith that defendant was the person who shot him as he answered the door. A subsequent investigation revealed a thumbprint on the handle of the screen door where the incident occurred matched defendant's thumbprint. Upon being brought in for questioning and during his interrogation, defendant initially denied any involvement in the shooting. Defendant later admitted he was present when Jones was shot (explaining why his fingerprint was found on the door). Defendant claimed the people he was with made him go along and one of them had shot Jones. When police showed Jones a picture of defendant, he confirmed defendant was the person who shot him.

¶ 5       In January 2018, defendant entered into a partially negotiated plea of guilty to aggravated battery with a firearm, a Class X felony (*id.* § 12-3.05(e)(1)). The remaining charges, including two counts of attempted murder and one count of unlawful possession of a firearm, were dismissed. The attempted murder charges each carried sentencing ranges of 6 to 30 years, 21 to 45 years if the State was able to prove defendant was armed with a firearm, and 31 to 55 years if the State was able to prove it was defendant who discharged the firearm (with the caveat the enhancements were discretionary because defendant was a minor at the time of the alleged offenses). Defendant's plea did not include an agreement as to his sentence. Defendant, his attorney, and the court engaged in the following colloquy.

"[DEFENSE COUNSEL]: And I do want to state for the record, that I have spoke [*sic*] to my client on a couple of occasion [*sic*] of the sentencing range of all the charges, but including those two attempt murders that were dismissed. We also spoke again last

night about this and the night before.

THE COURT: [Defendant], is that correct, your attorney spoke to you a number of times with regard to the sentencing ranges if convicted of all three of these charges?

[THE DEFENDANT]: Yes, sir.

THE COURT: Okay. I will go over it again with you today just to be sure.

But in any event, is what has just been stated in court your understanding and agreement as to resolution of this case?

[THE DEFENDANT]: Yes, sir.

* * *

THE COURT: Have you read and understood this plea of guilty form and two-page order form that's being handed to me here today?

[THE DEFENDANT]: Yes.

THE COURT: And did you understand those?

[THE DEFENDANT]: Yes, sir.

* * *

THE COURT: *** And have you discussed this matter in its entirety with your attorney?

[THE DEFENDANT]: Yes.

THE COURT: And are you satisfied with her services?

[THE DEFENDANT]: Yes."

¶ 6        Defendant's attorney then confirmed she reviewed the plea of guilty form and two-page Illinois Supreme Court Rule 402(a) (eff. July 1, 2012) plea agreement order with defendant, which included reading the pertinent parts to defendant to ensure he had no questions. The plea agreement order outlined the terms of the agreement and specifically stated, "[T]here is no agreement concerning the sentence." Defendant acknowledged counsel's recitation was correct, and he voluntarily signed the plea of guilty form. The trial court confirmed defendant was not under the influence of any drugs or alcohol, was not prescribed any medication that he was not taking, was in a good state of mind, felt healthy, alert and oriented, had discussed the matter in its entirety with his attorney, was satisfied with her services, and understood he could have persisted in a plea of not guilty and requested a trial. The court then informed defendant of the potential sentencing ranges for the other crimes he was charged with had he persisted in a plea of not guilty and continued to trial. The following exchange also occurred on the record.

"THE COURT: Have there been any promises made to you in order to plead guilty to Count 1 today?

[THE DEFENDANT]: No, sir.

THE COURT: Okay.

And you're aware of the sentencing range that will be in play on March 21st?

[THE DEFENDANT]: Yes, Sir.

THE COURT: And is anybody forcing you to do this today?

[THE DEFENDANT]: No, sir.

THE COURT: Is it still your desire to plead guilty to Count

- 4 -

1 and have the other counts dismissed?

[THE DEFENDANT]: Yes."

¶ 7 The trial court accepted defendant's guilty plea, finding he gave it knowingly and voluntarily.

¶ 8 At the sentencing hearing in March 2018, the trial court once again admonished defendant of the sentencing range, reciting the crime was not probation eligible and carried with it a minimum sentence of 6 years and a maximum sentence of 30 years in the Illinois Department of Corrections, to be served at 85%. The court once again stated, "No agreement as to sentencing." The court confirmed with both attorneys this was the agreement. The State noted that defendant accepted responsibility for the aggravated battery charge, but the more serious dismissed offenses had mandatory minimum sentences ranging from 6 years to over 30 years. The State argued for a lengthy sentence in the Illinois Department of Corrections, close to the maximum allowed. Defendant's attorney argued for a midrange sentence, around 8 to 10 years. The court, after considering defendant's brief statement in allocution and age, as well as the statutory factors in aggravation and mitigation and arguments of counsel, sentenced defendant to 25 years in prison.

¶ 9 Defendant's attorney filed a motion to reconsider sentence or to withdraw guilty plea. At the hearing on this motion, counsel acknowledged defendant realized his plea was a partially negotiated plea. However, defendant claimed he felt pressured to enter into the plea. After hearing arguments from counsel, the trial court denied the motion, finding defendant achieved the benefit of his bargain by negotiating away two attempted murder charges with significant sentences. The record supported defendant's knowing and voluntary waiver.

¶ 10 In 2021, defendant filed a direct appeal, arguing his sentence was excessive, the

trial court did not consider the *Miller* factors in his sentencing (see *Miller v. Alabama*, 567 U.S. 460 (2012)), and his counsel did not comply with Illinois Supreme Court Rule 604(d) (eff. July 1, 2017). The appellate court affirmed the trial court's judgment. *People v. Blakes*, 2021 IL App (3d) 190063-U, ¶ 37.

¶ 11 On December 4, 2023, defendant filed a *pro se* postconviction petition, claiming a denial of his constitutional rights because his guilty plea was involuntary, he did not understand the terms of the plea before it was entered, and the plea was based upon misrepresentations made by his counsel. In support, defendant claimed his learning disabilities and attention-deficit/hyperactivity disorder impaired his ability to "knowingly, understandingly, and voluntarily plead guilty." Furthermore, defendant claimed his plea was based on misrepresentations made by his counsel, who assured him he would be sentenced to no more than 12 years in prison. Defendant claimed he would have rejected the plea agreement had he known a longer sentence could be imposed. Defendant's petition was duly signed and notarized, and it was accompanied by a handwritten note from his mother. The note stated, during a meeting with her and defendant, plea counsel advised them defendant should accept the plea offer. This was based on the likelihood of receiving a 10 to 12 year prison sentence and the potential risk of losing at trial due to the complainant's testimony against him. Although the handwritten note was labeled as an affidavit, it was neither signed nor notarized, though it indicated his mother was willing to swear to the information under oath.

¶ 12 On February 15, 2023, the trial court dismissed defendant's petition as "[frivolous] and patently without merit." The court explained defendant's claims were "completely contradicted by the record," which showed he was repeatedly advised of the terms of the plea agreement, including the potential sentence.

¶ 13    This appeal followed.

¶ 14                    II. ANALYSIS

¶ 15    The sole issue on appeal is whether the trial court erred by summarily dismissing defendant's postconviction petition at the first stage as frivolous and patently without merit. Defendant contends his petition had an arguable basis of a claim in that his guilty plea was involuntary because he did not understand the terms of the plea and entered into the plea agreement based on false assurances made by his trial counsel. He contends, because he stated the gist of a constitutional claim his right to effective assistance of counsel was violated, he was entitled to appointment of counsel and advancement of his postconviction petition to second-stage proceedings.

¶ 16    The Act provides a remedy for defendants who have suffered a substantial violation of their constitutional rights. *People v. Edwards*, 197 Ill. 2d 239, 243-44 (2001). Defendants may assert their convictions resulted from a substantial denial of their constitutional rights under the United States Constitution, the Illinois Constitution, or both. *People v. Hodges*, 234 Ill. 2d 1, 9 (2009). A petition filed under the Act must "clearly set forth the respects in which petitioner's constitutional rights were violated." 725 ILCS 5/122-2 (West 2022). The petition shall have attached "affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached." *Id.* The Act sets forth a three-step process for adjudicating a postconviction petition. *People v. Jones*, 362 Ill. App. 3d 31, 33 (2005).

¶ 17    At the first stage of postconviction proceedings, the trial court may only summarily dismiss the petition if it is frivolous or patently without merit. 725 ILCS 5/122-2.1(a)(2) (West 2024); *People v. Tate*, 2012 IL 112214, ¶ 9. "A post-conviction petition is considered frivolous or patently without merit only if the allegations in the petition, taken as true

and liberally construed, fails to present the gist of a constitutional claim." (Internal quotation marks omitted.) *Edwards*, 197 Ill. 2d at 244. "The gist standard is a low threshold." (Internal quotation marks omitted.) *Id.* "To set forth the gist of a constitutional claim, the post-conviction petition need only present a limited amount of detail." (Internal quotation marks omitted.) *Id.* Only petitions with no arguable basis in law or fact may be dismissed at the first stage. *Hodges*, 234 Ill. 2d at 11-12. "A petition which lacks an arguable basis either in law or in fact is one which is based on an indisputably meritless legal theory or a fanciful factual allegation." *Id.* at 16.

¶ 18    On appeal, defendant argues counsel's alleged promise of a shorter sentence being imposed presents an arguable constitutional claim of ineffective assistance. Thus, the trial court erred in dismissing the petition at the first stage. This court reviews the summary dismissal of a postconviction petition *de novo*. *People v. Coleman*, 183 Ill. 2d 366, 388-89 (1998).

¶ 19    Both the United States and Illinois Constitutions guarantee a defendant the right to effective assistance of counsel at all critical stages of criminal proceedings. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8; see *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *People v. Albanese*, 104 Ill. 2d 504, 526 (1984) (adopting *Strickland*). This guarantee applies to the plea bargaining process. *Lafler v. Cooper*, 566 U.S. 156, 162 (2012); *Missouri v. Frye*, 566 U.S. 134, 145-48 (2012).

¶ 20    "At the first stage of postconviction proceedings under the Act, a petition alleging ineffective assistance of counsel may not be summarily dismissed if (i) it is arguable that counsel's performance fell below an objective standard of reasonableness and (ii) it is arguable that the defendant was prejudiced." (Emphases and internal quotation marks omitted.) *Tate*, 2012 IL 112214, ¶ 19.

> "In the context of a claim that trial counsel was ineffective
> during a guilty plea proceeding, the first prong of the *Strickland*
> standard remains the same, but to satisfy the second prong, a
> petitioner must show that there is a reasonable probability that, but
> for counsel's errors, he would not have pleaded guilty and would
> have insisted on going to trial." (Internal quotation marks omitted.)
> *People v. Hatter*, 2021 IL 125981, ¶ 26.

The defendant must then show that he or she would have been better off going to trial because of a viable defense or a likelihood of acquittal. *Id.* "A defendant's failure to establish either prong of the *Strickland* test precludes a finding of ineffective assistance of counsel." *People v. Henderson*, 2013 IL 114040, ¶ 11.

¶ 21    It is clear defendant was not prejudiced. During the plea, defendant told the trial court he was satisfied with his attorney and her services. In his postconviction petition, defendant claims that he would have rejected the plea deal if it had not been for counsel's promise. However, defendant has not shown, absent any claimed misrepresentations about sentencing from his attorney, he would have pleaded not guilty and insisted on proceeding to trial. A bare allegation a defendant would have pleaded not guilty and insisted on a trial if counsel had not been deficient is not enough to establish prejudice. *People v. Rissley*, 206 Ill. 2d 403, 458-59 (2003). Defendant was repeatedly admonished by the court that his guilty plea meant he could be sentenced to anywhere between 6 to 30 years in prison. He was then sentenced to 25 years. The record shows defendant faced significantly more prison time under the original charges. Before the open plea, defendant was charged with two counts of attempted murder, each carrying a sentencing range of 6 to 30 years in prison. In addition, the court noted defendant could face an

enhanced sentence of 21 to 45 years if the State was able to prove he was armed with a firearm and 31 to 55 years if the State was able to prove it was defendant who discharged the firearm. The charges defendant faced and their respective sentencing ranges vastly exceeded the sentence he received in exchange for pleading guilty to just one count of aggravated battery.

¶ 22 Moreover, for defendant's contention to be successful, it must have been brought with a "claim of innocence or the articulation of a plausible defense that could have been raised at trial." See *People v. Hall*, 217 Ill. 2d 324, 335-36 (2005). Defendant neither indicated he had any defense to the charges nor did he claim innocence. To the contrary, the evidence against defendant, at a minimum, included his fingerprint on the storm door of Jones's home, placing him at the crime scene, along with direct evidence by Jones, who claimed it was defendant who shot him. The record before the court shows defendant failed to demonstrate going to trial would have been more beneficial. It bears repeating, defendant was facing a significantly longer sentence if convicted on all the charges presented at trial. Consequently, defendant's contention he would have insisted on proceeding to trial and not pleading guilty had he known he faced more than 10 to 12 years in prison is without merit. This bare allegation does not establish an arguable basis defendant was prejudiced by his attorney's alleged promise. At the first stage of postconviction proceedings, the court is to accept well-pleaded factual allegations unless they are positively rebutted by the record. *People v. Dixon*, 2022 IL App (1st) 200162, ¶ 30. Any legal conclusions unsupported by allegations of fact are to be disregarded. *Id.* The petition submitted by defendant did not state a claim for ineffective assistance of counsel, as it did not specify how he was prejudiced or provide valid reasons for withdrawing his guilty plea. The allegations were refuted by the record. Because defendant cannot establish the requisite "arguable" prejudice prong of the *Strickland* test required in first-stage postconviction appeals, his claim fails. Thus,

the trial court properly dismissed defendant's postconviction petition.

¶ 23                                    III. CONCLUSION

¶ 24        For the reasons stated, we affirm the trial court's judgment.

¶ 25        Affirmed.